**AMERICAN NATIONAL BANK & TRUST CO., Plaintiff,**

v.

**ST. JOSEPH VALLEY BANK, Defendant, Third Party Plaintiff-Appellee,**

v.

**John W. AUGUSTINE and Nancy Lee Augustine, Third Party Defendants-Appellants.**

No. 3–778A162.

Court of Appeals of Indiana, Fourth District.

May 22, 1979.

Rehearing Denied July 12, 1979.

See 391 N.E.2d 685.

Donald C. Swanson, Jr., Fort Wayne, for third party defendants-appellants.

Geoffrey K. Church, Church, Meteiver, Warrick & Weaver, Elkhart, for third party plaintiff-appellee.

YOUNG, Judge.

This appeal arises from a suit in which the appellants were joined as third party defendants. Summary judgment was entered in favor of the original plaintiff and after trial to the court judgment was entered in favor of the defendant-third party plaintiff. No special findings of fact were requested or made. For purposes of this appeal we reconstruct the facts from the admissions in the pleadings, stipulations of counsel set out in the pre-trial order, and the evidence viewed in a light favorable to the judgment. The basic facts appear to be undisputed.

On March 25, 1973, John and Nancy Augustine contracted with Hanover Homes Corporation [Hanover] for the construction of a house. Pursuant to that contract, John and Nancy obtained a commitment for a mortgage loan from South Bend Federal Savings and Loan Association [South Bend]. Pursuant to the mortgage loan commitment and the construction contract, South Bend made three disbursements in the form of checks made payable to John, Nancy, and Hanover. It is the third check which is the subject of this suit. That check was issued by South Bend on November 9, 1973, as the third construction draw. The proceeds were intended to be paid entirely to Hanover. Both John and Hanover indorsed the check. Nancy, who had indorsed the two prior construction draws, did not indorse the third. No evidence in the record indicates that she was given the opportunity at this time. John told her that he had indorsed the check, on or about November 9, 1973. The check was deposited November 12, 1973 to Hanover's account at the St. Joseph Valley Bank [St. Joseph], and Hanover was given provisional credit despite the missing indorsement. The check was sent through the usual channels to the American National Bank & Trust Co. [American], the bank upon which South Bend's check was drawn. On November 13, 1973, American paid the check. Hanover was adjudicated bankrupt November 21. South Bend discovered the absent indorsement and notified American. American then reversed the debit of South Bend's account, and notified St. Joseph. St. Joseph made demand on Nancy to indorse the check. She did not do so. On December 4, 1973, American demanded reimbursement from St. Joseph. St. Joseph made demand on John and Nancy to pay the amount of the check to St. Joseph. The present litigation was initiated by American. St. Joseph impleaded John and Nancy, alleging liability on the basis of John's indorser's contract and transfer warranty, and the theory of unjust enrichment. John and Nancy appeal the judgment against them as contrary to law and based on insufficient evidence. We agree.

Facts similar to these now before us have frequently been the subject of litigation, however there are no cases on point. This is because these facts have universally been held as giving rise to a cause of action *against the bank* for conversion of the non-signing payee's interest in the check. In those cases, the defendant occasionally has been able to mitigate damages by showing that the proceeds were paid to the person intended to receive them. In this case St. Joseph has endeavored to stretch a mitigation of damages defense into a cause of action. *See Yeager and Sullivan, Inc. v. Farmers Bank*, (1974) 162 Ind.App. 15, 317 N.E.2d 792. *See generally*, Annot., Banks Liability to Nonsigning Payee, 47 A.L.R.3d 537.

Nevertheless, it is the duty of a reviewing court to sustain a judgment if a correct result has been reached under any theory applicable to the evidence. *In re Estate of Fanning*, (1975) 263 Ind. 414, 333 N.E.2d 80; *Malo v. Gilman*, (1978) Ind.App.,

379 N.E.2d 554; *Cressy v. Shannon Continental Corp.*, (1978) Ind.App., 378 N.E.2d 941.

The rights and liabilities of parties with respect to commercial paper are established in articles three and four of the Uniform Commercial Code, IC 1971, 26–1–3–101 et seq. and 26–1–4–101 et seq. With respect to a non-signing payee, the Code is unequivocal. "No person is liable on an instrument unless his signature appears thereon." IC 1971, 26–1–3–401(1). Also, the provisions of these articles demonstrate that St. Joseph's claim against John on the basis of his indorser's contract and transfer warranty is clearly without merit.

Section 3–116(b) provides that where a check is made payable to more than one payee jointly and not in the alternative, it can be negotiated, discharged or enforced only by all of the joint payees. Thus, if the indorsement of one payee is missing then the check is unenforceable on its face. It is undisputed that the check was not made payable in the alternative. St. Joseph does not qualify, therefore, as a holder because the check is not issued or indorsed to St. Joseph, or to bearer or in blank. IC 1971, 26–1–1–201(20). Because St. Joseph is not a "holder," St. Joseph cannot recover from John on his indorser's contract. IC 1971, 26–1–3–414(1) provides:

> Unless the indorsement otherwise specifies (as by such words as "without recourse") every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement *to the holder* or to any subsequent indorser who takes it up . . . . (Emphasis added).

We also note that IC 1971, 26–1–3–507, defining dishonor, specifically excludes return of an instrument for lack of proper indorsement.

John's transfer warranty is also of no benefit to St. Joseph. IC 1971, 26–1–3–417(2) provides:

> Any person who transfers an instrument and receives consideration warrants to his transferee *and if the transfer is by indorsement to any subsequent holder who takes the instrument in good faith that*
> (a) he has a good title to the instrument   .   .   .
> (b) all signatures are genuine or authorized; and
> (c) The instrument has not been materially altered; and
> (d) no defense of any party is good against him; and
> (e) he has no knowledge of any insolvency proceeding   .   .   .. (Emphasis added).

We do not perceive in what manner this warranty is supposed to have been breached. It is obvious that an indorser does not warrant against future forgeries or alterations. The wrong in this case, namely depositing the check without all necessary indorsements, occurred after his indorsement. Although John knew that Hanover intended to attempt negotiation of the check without Nancy's indorsement, *nothing* in § 3–417(2) indicates that he should be held liable for Hanover's success. There is no warranty to the bank against the bank's own palpable negligence.

St. Joseph has claimed a right to subrogation under IC 1971, 26–1–4–407. That section provides that if a payor bank has paid an item under circumstances giving a basis for objection by the drawer, the bank shall be subrogated to the rights of any holder in due course on the item against the drawer, of the payee or any other holder against the drawer either on the item or the underlying transaction, or of the drawer against the payee with respect to the underlying transaction. IC 1971, 26–1–4–407. The purpose is to prevent unjust enrichment. Thus, a payor bank is subrogated only to the extent necessary to prevent loss to itself. The term "payor bank" is defined in IC 1971, 26–1–4–105(b), as "a bank by which an item is payable as drawn or accepted." Under that section, St. Joseph is both a "depository bank," being the first bank to which the item is transferred for collection, 26–1–4–

105(a), and a "collecting bank" handling the item for collection, 26–1–4–105(d), but not a "payor bank." Therefore, subrogation under § 4–407 is not available to St. Joseph. Nevertheless, St. Joseph claims that by reading § 4–407 together with IC 1971, 26–1–1–103, which provides that unless displaced by the code, principles of law and equity shall apply, St. Joseph should be treated as a "payor bank" because St. Joseph allowed Hanover to withdraw against its provisional credit. Thus St. Joseph argues that it has paid the item. We have found no precedent for this. We believe that by referring only to payor banks, § 4–407 was intended to apply only to payor banks and not depository banks. In any case, the check at issue here had been paid, wrongfully, by American, the payor bank. St. Joseph's "payment" is merely the result of its liability to American for breach of St. Joseph's warranty of good title under IC 1971, 26–1–4–207.

█ The commercial code does provide remedies for a party in the position of St. Joseph. The first, recourse against Hanover, is cold comfort in light of Hanover's bankruptcy. An alternative is available by means of IC 1971, 26–1–3–201(1) and –202(3). Section 3–202(3) provides that unless the indorsement conveys the entire interest it is not a negotiation. Compare § 3–116(b). However, it does operate as a partial assignment which is an effective transfer under § 3–201. *Accord: Earnest v. Barrett*, (1893) 6 Ind.App. 371, 33 N.E. 635. Section 3–201(1) provides that "Transfer of an instrument vests in the transferee such rights as the transferor has therein . . . ." This provision, commonly called the "shelter" principle, allows a transferee a possible betterment of his own position by assuming the status of his transferor. Thus, a transferee may claim the rights of a holder if he proves that his transferor was a holder. St. Joseph, however, is not in this position. Hanover was not a holder for the same reason that St. Joseph is not a holder. As one of three joint payees, he could only be a holder with the indorsements of the other two, to him or to bearer or in blank. What remains to St. Joseph, then, is described in 2 *Bender's Uniform Commercial Code Service* § 12.02[1] (1976): "Absent proof of a transfer from a holder, or from a transferor who had the rights of a holder, the transferee is no better than an assignee of a simple contract obligation who must plead and prove consideration and performance of all conditions precedent." The "simple contract obligation" in this case is South Bend's. "[W]here a negotiable instrument is transferred with the indorsement of only one of two joint payees, the transferee is held to acquire the indorser's interest and stand in the position of holder of a nonnegotiable chose in action." 11 Am.Jur.2d, *Bills and Notes* § 323. A chose in action is defined as a "personal right not reduced into possession, but recoverable by a suit at law." Black's Law Dictionary, p. 305 (West Publishing 1968 4th ed.). Examples include life insurance policies, *Stewart v. Gwynn*, (1907) 41 Ind.App. 320, 82 N.E. 1000, and open or unliquidated account, *Miami Coal Co. v. Fox*, (1931) 203 Ind. 99, 176 N.E. 11. Because John and Nancy were not intended to receive any share, Hanover had an equitable interest in the entire proceeds of the check. It is *this* interest which was transferred to St. Joseph and not any contract obligation of John and Nancy to Hanover. We cannot conceive why South Bend, as the drawer of this check, was not made a party to this suit. Nevertheless it was not. Therefore this discussion is meant only to demonstrate that John and Nancy are inappropriate defendants.

█ St. Joseph bases its claim in unjust enrichment on the ground that it conferred a benefit on John and Nancy by discharging their debt to Hanover.

In order to recover upon this theory it was incumbent on St. Joseph to prove that John and Nancy were indebted to Hanover in the amount of the check at the time the check was paid. We do not feel that St. Joseph has sustained this burden.

St. Joseph argues that according to the terms of the contract the Augustines were required to pay Hanover at least that amount, and that "while the contract be-

tween Hanover Homes Corporation and the Augustines called for the Augustines to make payment to Hanover Homes which exceeded the value of the work actually done on the house to that date, it was, nevertheless, a valid and binding contract requiring the Augustines to make the scheduled payments." Two circumstances undercut this argument. First, the payments in fact made did not follow the schedule of payment set out in the contract, thus the contract provision is not dispositive of the parties' obligations under the contract. *See generally*, J. Calamari & J. Perillo, Contracts, § 52, p. 102 (1970). *Cf.* Ind. Uniform Commercial Code, IC 1977, 26–1–2–208 (in context of sales of goods). Second, Hanover's breach released the Augustines from their obligations under the contract. *See generally*, J. Calamari & J. Perillo, Contracts, § 163, pp. 259–62 (1970). Thus the issue is whether Hanover was entitled to the sum of the check for work completed at the time of the breach.

■ The check itself is not substantial evidence of debt, as St. Joseph's argument above indicates. There is no evidence of what part of the sum represented was attributable to work completed. Our endeavor to determine the existence of a debt by comparing the cost to complete the house in fact, as undertaken by the Augustines, with the cost to complete the house under the contract, is fruitless.

There are too many variables to accurately compare the cost to the Augustines for completion of the home with the cost to Hanover under the contract. No specifications or plans were introduced into evidence to indicate details of how the house was to be finished. Apparently the Augustines' computation of costs includes items which were not included in the Hanover contract, for instance a fireplace, and did not include the cost of labor for many items. Materials may have differed in quality and therefore in price from those intended. Even if we could determine that the Augustines did nothing to complete the house other than what was provided for in the Hanover contract, a comparison would be invalid because of price differentials for materials between individuals and businesses and the question of cost of labor. A determination either way on this basis can only result from speculation.

A judgment must be based on substantial evidence and reasonable inferences. Speculation is not enough. *Palace Bar, Inc. v. Fearnot*, (1978) Ind., 381 N.E.2d 858, 864–65. Therefore we reverse.

Reversed.

CHIPMAN, P. J., and MILLER, J., concur.