In re COHN BROTHERS, INC., t/a
Alex Mushkin, Debtor.

Bertram MUSHKIN, Plaintiff,

v.

COHN BROTHERS, INC., t/a Alex
Mushkin and Northeastern Bank
of Pennsylvania, Defendant.

Bankruptcy No. 5–83–00250.
Adv. No. 5–83–0253.

United States Bankruptcy Court,
M.D. Pennsylvania.

Jan. 16, 1985.

Brigid E. Carey, Scranton, Pa., for plaintiff, Mushkin.

Brian J. Cali, Scranton, Pa., for debtor/Cohn Brothers.

C.H. Welles, IV, Scranton, Pa., for Northeastern Bank.

## MEMORANDUM AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

On June 2, 1983, the plaintiff, Bertram Mushkin (Mushkin) filed a Complaint requesting an Order be entered against the defendants, Cohn Brothers, Inc. (Cohn) and Northeastern Bank (Bank) adjudging that Cohn and the Bank have no right, interest or title in the proceeds of a $15,000.00 insurance check and that the $15,000.00 in principal, plus interest, be turned over to Mushkin. For the reasons set forth herein, we find that Mushkin is entitled to $11,-697.70, plus interest, and that the balance remaining be turned over to the Northeastern Bank.

The facts are as follows. Mushkin, Susie Mushkin and Herbert Mushkin entered into an Agreement of Sale for the business known as Alex Mushkin, with Cohn Brothers, Inc. on February 9, 1976. Since that date, the Cohn Brothers have traded as Alex Mushkin. Since the sale date, both Susie and Herbert Mushkin have died and all their interests have devolved by inheritance to Bertram Mushkin. A Security Agreement signed on February 9, 1976, the same date as the sales agreement, gave Mushkin a security interest in three (3) Bay City cranes. There is no dispute as to the validity of the security agreements, financing statements or their filing in the proper offices. On May 21, 1982, one of the cranes was lost in a caving accident. The crane was insured with the U.S. Fidelity & Guaranty Company of Maryland (Fidelity). Fidelity determined to pay the full loss and did prepare a check for Fifteen Thousand ($15,000.00) Dollars to pay the loss upon the policy. The insured's name on the policy reads "Cohn Brothers, Inc., t/a Alex Mushkin & Stuart & Mark Cohn." The loss payable clause reads "issued to Cohn Brothers, Inc., t/a Alex Mushkin & Stuart & Mark Cohn. Loss, if any, shall be adjusted with the insured and payable to the insured and Bertram Mushkin." The check from Fidelity was made payable to the order of Alex Mushkin, Stuart Cohn and Mark Cohn, t/a Cohn Brothers, Inc. and Bertram Mushkin. This check was dated April 11, 1983. Cohn Brothers, Inc. marked the $15,000.00 check "for deposit only" and presented it to the Bank. This check was credited to Cohn's account by the Bank giving Cohn a provisional credit. Bertram Mushkin, payee on the check and a loss payee on the insurance policy, never endorsed or had possession of the check prior to its presentation to the Northeastern Bank. The check was presented to the Bank on April 12, 1983.

On April 11, 1983, the day before the $15,000.00 check was presented to the Bank, Cohn wrote checks to Bertram Mushkin totaling Five Thousand One Hundred Eighty-Three and 47/100 ($5,183.47) Dollars. The checks represented obligations separate and apart from that represented by the insurance claim. Bertram Mushkin presented these checks, with the exception of Check # 319 for $287.27, to the Bank on April 12, 1983 after the deposit of the $15,000.00 insurance check. Check # 319 was presented to the Bank on April 14, 1983. In addition, a check for $12.32 and dated April 13, 1984 was also presented on April 14, 1984. The April 11th and April 13th checks written by Cohn and payable to Mushkin total $5,195.79. Subsequent to the deposit of the $15,000.00 check in Cohn's account, checks were drawn in the total amount of $11,934.89. This figure includes the above referenced checks to Bertram Mushkin from Cohn. Cohn's account was overdrawn as a result of the return of the $15,000.00 check on April 20, 1983. The check was returned to Northeastern by Fidelity because of Mushkin's failure to endorse the check. As a result of the return of the check, Cohn's account with Northeastern Bank was overdrawn in the amount of $6,461.94. On April 11, 1983, the day Cohn wrote out approximately $5,000 of checks to Mushkin, Cohn's account had insufficient funds to cover payment of those checks. But for the deposit of the $15,000.00, which funds were

used to cover the payment of the April 11th checks, the checks would not have been honored by the Northeastern Bank. Cohn Brothers, Inc. t/a Alex Mushkin filed for reorganization under Chapter 11 on April 21, 1983.

We note initially that the case is no longer a Chapter 11 and the Trustee has asserted that the estate has no interest or claim with respect to the $15,000.00 insurance proceeds now held in escrow by the Bankruptcy Clerk. The interested parties, therefore, are Mushkin and the Bank. The positions of the parties as to how the $15,000.00 check should be divided are as follows. The Northeastern Bank filed an Answer which in short denied that Mushkin should have complete title and interest to the $15,000.00 check. The Bank also filed a crossclaim against Cohn Brothers, representing that the Bank deposited the check into Cohn's account and that Cohn drew checks from the account for $11,934.89, subsequent to the deposit of the $15,000.00 check. The Bank further alleges that Cohn knew he was not entitled to the funds represented by the check when the other checks were drawn on the account. As a result, Cohn's account is overdrawn in the amount of $6,461.94 of which the Bank makes claim. The Bank's crossclaim against Mushkin alleges that Mushkin has already received the benefit of $5,195.79 of the $15,000.00 he claims is due and owing to him. The Bank also filed a crossclaim against Stuart Cohn alleging that a check drawn on the account of Cohn Brothers, Inc. and made payable to Stuart Cohn for $2,000.00 is a voidable preference under § 547 of the Bankruptcy Code. On August 1, 1983, Mushkin filed an Answer to the Bank's crossclaim. Mushkin claims that Cohn's overdrawing of the account is irrelevant to the eligibility of turnover of the $15,000.00. Mushkin also reasserts many of his allegations from the original complaint, mainly that the $15,000.00 was made payable to him and that he never had possession of the check nor endorsed or received any benefit from the $15,000.00. Finally, the Northeastern Bank questions the jurisdiction of this court to make a determination in this matter.

## DISCUSSION

■ Before proceeding to the issue of proper title and interest in the proceeds of the $15,000.00 check we will address the Bank's claim that this court does not have jurisdiction to determine this matter. We note that the debtor, Cohn Brothers, Inc., t/a Alex Mushkin, was named as a defendant in the original complaint commencing this proceeding. That complaint asserted that the proceeds of the $15,000.00 check were in the joint control of the debtor and Northeastern Bank and the complaint requests that the debtor and the Bank turn over that amount to the plaintiff, Bertram Mushkin. We note that the original complaint brought to issue matters which are properly within the jurisdiction of the Bankruptcy Court. This court's jurisdiction to hear this matter is not altered by the fact that subsequent to the filing of the original complaint, the Trustee in this matter determined that the debtor's estate had no claim to any portion of the $15,000.00 check. Since this court had jurisdiction over this matter, we are not convinced that it would be in the interest of justice or in the interests of comity with state courts or respect for state law that we should, at this point in the proceeding, abstain from hearing this case and dismiss it for lack of jurisdiction.

■ We have already mentioned that the debtor's estate through the Trustee has no claim to the proceeds of the $15,000.00 check, thus enabling us to clear the first hurdle toward determining who should get title to the proceeds of the check. The rights and liabilities of parties with respect to commercial paper are established in divisions 3 and 4 of the Uniform Commercial Code, 13 Pa.C.S.A. § 3101, et seq. and § 13 Pa.C.S.A. § 4101, et seq. Section 3116(2) (Instruments payable to two or more persons) provides that "[a]n instrument payable to the order of two or more persons; if not in the alternative is payable to all of them and may be negotiated, discharged or

enforced only by all of them." If the endorsement of one payee is missing the check is unenforceable on its face. *American National Bank & Trust Company v. St. Joseph Valley Bank v. Augustine,* 180 Ind.App. 546, 389 N.E.2d 379 (1979). There is no dispute in this case that the check was not made payable in the alternative. Therefore, when Cohn presented the check to the Northeastern Bank the check was totally unenforceable. The liability of the Bank is governed by § 3419 (Conversion of instrument; innocent representative). Section 3419(a)(3) provides "an instrument is converted when it is paid on a forged endorsement." There is no dearth of cases holding that payment on a missing endorsement is equivalent to payment on a forged endorsement under § 3419. *Moram Agencies, Inc. v. Farrell Transportation, Inc.,* 35 U.C.C. Reporting Service, 1236 (D.C.Pa. 1982). We also note that the Bank did not present any evidence that the plaintiff was negligent under § 3406 or that the endorser (Cohn) was acting as the plaintiff's agent under § 3403. We, therefore, find that the check as presented to the Bank was unenforceable on its face and that the Bank by accepting the check and providing Cohn a provisional settlement converted the check under § 3419(a)(3).

■ The next matter for determination is the limitation and/or measure of liability of the Bank to Mushkin. If the Bank had exercised reasonable commercial standards in accepting the presentment and giving a provisional credit to Cohn, then we would determine under § 3419(c) that the Bank was only liable for any amount of proceeds remaining in its hands. We find, however, that by accepting a check without all endorsements the Bank did not exercise reasonable commercial care and, therefore, liability is determined pursuant to § 3419(b). The measure of liability under § 3419(b) is the face amount of the instrument which in this case is $15,000.00.

We next address the assertion by the Bank that if Mushkin has title to any of the proceeds represented by the $15,000.00 check, then it is not for the full amount of

the $15,000.00 because Mushkin has had the benefit of approximately $5,195.79 (the amount of the April 11th and April 13th checks from Cohn to Mushkin). The Bank asserts that the $5,195.79 was actually paid from the proceeds of the $15,000.00 check deposited in Cohn's account. In essence, the Bank traces the $5,159.79 in checks to the $15,000.00 insurance check deposited in Cohn's account. Mushkin replies that he was not aware of the deposit of the check and is only seeking the check as his secured property to apply against a properly secured claim. In addition, Mushkin asserts that the Bank should not be able to unwork the consequences of its commercially unreasonable action of accepting the check as presented by Cohn. Finally, Mushkin asserts that the money he received by checks dated April 11th and April 13th were for obligations separate and apart from those that were represented by the $15,000.00 insurance check.

While we recognize the Bank did not exercise reasonable commercial standards in this case, we nevertheless are in agreement with its position that this court should trace the funds which are already in Mushkin's possession. The parties stipulated that as a result of the check being overdrawn and returned to the Bank, Cohn's account was overdrawn in the amount of $6,461.94. We note that this figure was the balance on Cohn's checking account on March 25, 1983. On March 11, 1983, the day in which Cohn wrote out the approximately $5,183.47 worth of checks to Mushkin, Cohn had $1,329.28 in his checking account. This amount was clearly insufficient to pay the checks made to Mushkin's order on April 11, 1983. But for the deposit of the $15,000.00 insurance check on March 12, 1983, most of the checks written by Cohn to Mushkin would have been dishonored for reason of insufficient funds. We make this determination by tracing the funds deposited and charged against Cohn's checking account with the Bank. The balance in Cohn's account on April 11, 1984 was $1,329.28. In addition to the deposit of the $15,000.00 insurance check on April 12, 1983, the summary of

transactions on Cohn's account reflects an additional deposit of $228.62. Although other items were charged against the account, the Bank has not indicated the order in which charges were made against the account. Consequently, we trace at least $1,557.90 of the total checks dated April 11, 1983 to funds other than represented by the insurance check. A check dated April 11, 1983 for $287.27 and a check dated April 13, 1983 $12.32 were presented subsequent to a deposit of $2,133.36 on April 14, 1983. We trace these checks not to the insurance funds but rather to the April 14th deposit. We find, therefore, that of the total $5,195.79 checks made payable to Mushkin's order, $3,302.30 are directly traceable to the $15,000.00 insurance proceeds. We also find that Mushkin has an unsecured claim against Cohn for $3,302.30.

■ We must next determine the validity of the Bank's crossclaim against Cohn Brothers for the amount of the overdraft on Cohn's account for $6,461.94. 13 Pa.C.S.A. § 4212(a) provides:

> **Right of collecting bank to charge-back or refund.**—If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to the account of its customer or obtain refund from its customer whether or not it is able to return the item if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. These rights to revoke, charge-back or obtain refund terminate if and when a settlement for the item received by the bank is or become final (sections 4211(c) and 4213(b) and (c).

We find under the facts of this case that the Northeastern Bank can properly charge-back Cohn's account the amount of the overdraft regardless of whether or not the Bank failed to exercise reasonable commercial standards by accepting the check from Cohn. We direct the parties attention to 13 Pa.C.S.A. § 4212(d)(2), which reads: "The right to charge-back is not affected by . . . (2) failure by any bank to exercise ordinary care with respect to the item but any bank so failing remains liable." See also *Belmar Trucking Corp. v. American Trust Co.,* 65 Misc.2d 31, 316 N.Y.S.2d 247 (N.Y.County Cir.Ct.1970); *Salsman v. National Community Bank,* 102 N.J.Super. 482, 246 A.2d 162 (1968); *White Lumber Co. v. Crocker-Citizens Nat'l Bank,* 253 Cal.App.2d 368, 61 Cal.Rptr. 381 (1967). Based on the foregoing, the Northeastern Bank may charge-back the remaining share of the $15,000.00 insurance check or in other words, $3,302.30 plus interest to Cohn's account. If there is any balance left over from Cohn's account being overdrawn then the Northeastern Bank will also have an unsecured claim for that amount.

■ Finally, we will address the claim of Northeastern Bank that a check drawn by Cohn Brothers, Inc. and payable to Stuart Cohn in the amount of $2,000.00 and dated April 13, 1983 is a voidable preference under § 547 of the Bankruptcy Code. We find that the Bank's claim fails because § 547 of the Bankruptcy Code dealing with preferences is available only to the Trustee or debtor-in-possession and the Bank does not have standing to proceed under § 547.

We make the above findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.