**Robert D. WAYE and B. Joan Waye, d/b/a Medfax–Sentinel, Plaintiffs,**

**v.**

**COMMONWEALTH BANK d/b/a Commonwealth Bancshares Corporation and Subsidiaries, Defendant.**

No. 3:CV–93–0298.

United States District Court, M.D. Pennsylvania.

Feb. 4, 1994.

Plaintiffs, pro se.

Joseph P. Kane, Michael J. Zicolello, Marshall, Dennehy, Warner, Coleman, Goggin, Williamsport, PA, for defendant.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiffs Robert D. Waye and B. Joan Waye d/b/a Medfax–Sentinel filed this action to recover for alleged improprieties of defendant Commonwealth Bank d/b/a Commonwealth Bancshares Corporation and Subsidiaries (Commonwealth or the bank) in the handling of a business checking account which plaintiffs maintained with the bank. Plaintiffs' allegations arise out of the bank's notification, in October, 1989, to federal authorities of suspected check kiting by plaintiff Barbara Joan Waye and the events which preceded and followed that notification.

Plaintiffs allege that: "[I]n October, 1989, Defendant filed a report with the Federal Bureau of Investigation, accusing the Plaintiffs of engaging in a no-loss check kiting scheme" and that: in October 1991, "[d]efen-

dant reported to federal authorities that it had been victimized by Plaintiff's fraudulent check kiting scheme and instigated criminal charges against Plaintiff Mrs. Waye." (Plaintiffs' complaint, pp. 3–4). Plaintiffs allege that the information given to federal authorities regarding the closing of plaintiff's accounts, etc., was false.

Plaintiffs' complaint alleges five claims against the bank: 1) Count I alleges negligence and bad faith on the part of the bank based on allegedly false reports to federal authorities regarding the status of, and transactions linked to, the Medfax–Sentinel and Barbara Joan Waye's suspected involvement in a check kiting scheme; 2) Count II alleges the violation of the federal Right to Financial Privacy Act (the Act), 12 U.S.C. §§ 3401–3422, based on the bank's release of information to federal authorities regarding a suspected check kiting scheme involving the Medfax–Sentinel account; 3) Count III alleges that the bank violated the Uniform Commercial Code (the Code or the UCC), 13 Pa. Const.Stat. §§ 4201–4214, by failing to notify plaintiffs in a timely manner of dishonor of checks deposited in the Medfax–Sentinel account at Commonwealth; 4) Count IV asserts a claim for punitive damages; and 5) Count V alleges claims of libel and slander based on a newspaper article about plaintiff Barbara Joan Waye's indictment on federal criminal charges for check kiting.

Before the court are: 1) a Rule 12(b)(6) motion filed by defendant to dismiss plaintiffs' complaint for failure to state a cause of action or, in the alternative, a motion for summary judgment; and 2) a motion by plaintiffs to strike alleged misrepresentations of fact in defendant's reply.

For the reasons below, defendant's motion will be treated as a motion for summary judgment, and the motion will be granted. Summary judgment will be entered in defendant's favor and against plaintiffs on all Counts of their complaint. Plaintiffs' motion to strike will be denied.

## DISCUSSION

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### Summary judgment standard

■ Defendant moved for dismissal under Rule 12(b)(6) or, in the alternative, for sum-mary judgment under Rule 56. Both sides submitted documents outside the pleadings for the court's consideration. Both make arguments based on such documents and rely on them to support their respective positions. We will, therefore consider the motion as a motion for summary judgment.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553 and 325.

■ Issues of fact are " 'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving par-

ty." *Childers v. Joseph,* 842 F.2d 689, 693–94 (3rd Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3rd Cir.1988).

### Claims of negligence and bad faith

■ Count I of plaintiffs' complaint alleges a claim of negligence and bad faith based upon defendant's report to federal authorities that plaintiff Barbara Joan Waye was involved in a check kiting scheme and upon defendant's alleged acquiescence in plaintiffs' conduct.

Plaintiffs allege, *inter alia,* that: 1) the defendant permitted and acquiesced in the course of conduct which led to charges of check kiting, by permitting plaintiffs to overdraw their checking account repeatedly through the use of overdraft protection made available to plaintiffs by the defendant bank; and 2) filed a report with the Federal Bureau of Investigation which stated that Dr. Waye had been asked to close out his account when this was, in fact, not true. Plaintiffs allege that defendant breached an alleged fiduciary duty and that by "secretly reporting" to federal authorities plaintiffs' suspected involvement in check kiting, defendant acted negligently and in bad faith.

Plaintiffs' claims based on the report made to federal authorities are barred by section 3403(c) of the Right to Financial Privacy Act, which authorizes such notification and declares financial institutions exempt from claims such as those asserted here. Section 3403(c) provides, in relevant part:

> Nothing in this chapter shall preclude any financial institution ... from notifying a Government authority that such institution ... has information which may be relevant to a possible violation of any statute or regulation ... Any financial institution making a disclosure of information pursuant to this subsection, shall not be liable to the customer under any law or regulation of the United States or any constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the customer of such disclosure.

Under the plain language of the section 3403, plaintiffs have no cause of action against Commonwealth for its notification to federal authorities of suspected check kiting by plaintiffs.

Not only is the bank protected from civil liability for reporting such conduct, but federally chartered banks, such as the defendant,[1] have an obligation under federal regulations to report suspected criminal activity to federal authorities. 12 C.F.R. § 21.11. The willful failure to report such conduct may subject the bank to civil penalties. 12 C.F.R. § 21.11(h).

■ Plaintiffs' negligence claim also fails because no duty was owed. A bank/customer relationship is not a fiduciary one. See: *Temp–Way Corp. v. Continental Bank,* 139 B.R. 299, 319 (E.D.Pa.1992) and *Bohm v. Commerce Union Bank of Tennessee,* 794 F.Supp. 158, 164 (W.D.Pa.1992). Banks have, in any event, no fiduciary obligation to refrain from reporting suspected illegal activity on the part of their customers.

■ Plaintiff's claim for bad faith fails as well. No such cause of action exists. Under Pennsylvania law, there is no separate legally

---

1. Although the bank's name as stated in the case caption does not indicate that it is a federally chartered bank, (See: 12 U.S.C. § 22.), since neither the word "national" or the abbreviation "N.A." appear anywhere in its title, exhibit "D1" to plaintiffs' complaint does indicate that Commonwealth is federally chartered. Exhibit "D1", a letter from Harold B. Fravel, Commonwealth Vice President and Auditor, refers to the bank at which plaintiffs' accounts were held as "Commonwealth Bank & Trust Co., N.A." It appears to the court from the documents before it that Commonwealth Bank & Trust Co., N.A. is an affiliate or a subsidiary of Commonwealth Bancshares Corporation, the name which appears on the letterhead. We therefore, proceed under the assumption that the defendant is federally chartered and is subject to the regulations governing national banks.

enforceable obligation on the part of a bank to deal with its customers in good faith. *Creeger Brick and Building Supply, Inc. v. Mid–State Bank and Trust Company,* 385 Pa.Super. 30, 560 A.2d 151, 154–55 (1989).

Finally, any negligence claim asserted by plaintiffs is barred by Pennsylvania's two-year statute of limitations governing tort actions, 42 Pa.Cons.Stat.Ann. § 5524(7). The latest date on which plaintiffs allege wrongdoing by the bank is December, 1990.[2] Plaintiffs' complaint was not filed until March 2, 1993. Any tort claim based on events which occurred prior to March 2, 1991 is, therefore, time-barred.

Summary judgment will be granted in favor of defendant on Count I of plaintiffs' complaint.

### Claims asserted under the Financial Privacy Act

█ Count II of plaintiffs' complaint asserts a claim under the federal Right to Financial Privacy Act. The basis for plaintiffs' claim is their contention that the bank disclosed more than is permitted by federal law in notifying federal authorities of plaintiff's involvement in check kiting. Plaintiffs concede, in their complaint,[3] that the Act authorizes notification of federal authorities, but claim that the bank overstepped the bounds of the Act by concluding in its letter to the FBI dated October 16, 1989, that "plaintiffs were guilty of conducting a kiting scheme" instead of merely reporting its *suspicion* that plaintiff Barbara Joan Wayé was involved in such a scheme. (Plaintiff's complaint, exhibit "D1").

There is no difference of any legal consequence between the reporting of illegal activity and the reporting of "suspected" illegal activity. The bank acted consistent with federal law, (See: 12 U.S.C. § 3403(c) and 12 C.F.R. § 21.11) in reporting plaintiffs' acts to federal authorities. Failure to preface its report of such activities with the word "suspected" does not give rise to any cause of action or subject it to civil liability. See generally the discussion at pp. 8–14 in the memorandum filed this date in *Waye v. First Citizen's National Bank,* 846 F.Supp. 310, 315–18, 1994 WL 76614, Civil No. 3:CV–93–0297.

Summary judgment will, therefore, be granted in defendant's favor on Count II of plaintiffs' complaint.

### Claim for alleged illegal withdrawal of funds from plaintiffs' account

█ Count III of plaintiffs' complaint alleges that the bank illegally withdrew funds from plaintiffs' account. Plaintiffs allege that in August, 1989, defendant sent a letter to plaintiffs informing them of a deficit balance in their account of $26,140.05, but claim that no such deficit ever appeared on their monthly account statements. Plaintiffs allege that defendant "charged back returned deposit items to the Plaintiffs' account in September, 1989 in violation of UCC 2B, Art. 4 Section 202(1)(b) and (2) by failing to issue timely and proper notice to Plaintiffs of returned deposit items and by failing to charge back these items to Plaintiffs' account before its midnight deadline." (Plaintiffs' complaint, pp. 7–8 and exhibits "C" and "H").

Plaintiffs further claim that "the Defendant violated federal banking regulations by failing to send the Plaintiffs timely notice of dishonor of return deposit items through waiting weeks before charging these items back to Plaintiffs' account and then withdrawing funds from plaintiffs' account to cover the return deposit items after losing their opportunity and right to collect charge-back amounts deducted from Plaintiffs' account." (Plaintiffs' complaint, p. 9).

The asserted basis for plaintiffs' claims is unclear. Plaintiffs allege the violation of the Uniform Commercial Code in the body of Count III, but allege in the *ad damnum* clause for that count the violation of federal banking regulations. Count III is captioned a claim for illegal withdrawal of funds from plaintiffs' account, adding a further layer of confusion. Whichever is the asserted basis for plaintiffs' claim, they cannot recover.

---

**2.** Plaintiffs allege in paragraph 11 of Count I that: "Defendant continued to authorize Plaintiffs' overdraft protection commercial agreement, during and throughout 1990 ..."

**3.** See: Plaintiffs' complaint, Count II, paras. 5 and 6.

As proof of their claim, plaintiffs cite a letter from defendant dated August 31, 1989 informing them of the need to remedy immediately a deficit balance of $26,140.05 in their account, and contrast that with account statements for the months of August and September, 1989 which fail to show a deficit balance. Plaintiffs cite these documents as proof that the bank failed to notify them seasonably of its intent to dishonor items presented for payment, in alleged violation of Section 202 of the Code.

In the letter of August 31, 1989, plaintiffs were advised:

> Per our conversation of August 23, 1989, Commonwealth Bank ... has a permanent hold on your checking account 1069 345 3. This hold was put on the account to cover deposits made from other banks using uncollected funds.
>
> As of todays date checks have been returned to us in amounts totaling $58,150.00. The account balance in the checking account is $32,009.95. This leaves your account in a deficit balance of $26,140.05. Due to the deficit balance, the bank is giving you ten days from todays date August 23, 1989 to rectify the situation. This can be accomplished by coming into our office ... and depositing cash, cashiers check, or a money order to cover the $26,140.05. If no solution to the problem is found before September 11, 1989, we will have no alternative but to use legal means to recover the money owed to us.

(Plaintiffs' complaint, exhibit "C")

Plaintiffs' account statement dated August 31, 1989 reflects an account balance of $32,009.95 as of August 28, 1989, just as defendant's letter states. Defendant's letter dated August 31, 1989, makes it clear that checks totaling $58,150.00 drawn on other banks which were deposited in plaintiffs' Commonwealth Medfax–Sentinel account were returned to Commonwealth as uncollectible. In the interim, plaintiffs' account was credited with the checks deposited and the bank paid out monies, based on the balance including the deposits subsequently found to be uncollectible. The uncollectible deposits were not subtracted from plaintiffs' balance on their August and September, 1989 monthly statements. Plaintiffs' account was nevertheless, $26,140.05 short due to the uncollectible deposits. Defendant's letter of August 31, 1989 indicates that plaintiffs were orally informed of this fact on August 23, 1989. Plaintiffs have produced no documents or affidavits which controvert these facts.

The most glaring deficiency in plaintiff's claim is the failure to allege any recoverable damages or compensable harm as a result of defendant's alleged failure to follow UCC requirements. The *ad damnum* clause for Count III does not contain a demand for any type of damages. It merely recounts plaintiffs' claim that the defendant violated federal banking regulations. In their "summation" at the conclusion of their complaint, plaintiffs list five types of harm for which they seek damages: 1) harm to their careers; 2) harm to their reputations; 3) reduction in their income from a sum in excess of $500,000.00 per year to a dependency on federal assistance programs; 4) pain and suffering; 5) damages to plaintiffs' five school-aged children as a result of defendant's press releases; and 6) "such other losses as will be developed at time of trial."

In their brief opposing defendant's motion, plaintiffs indicate that the thrust of Count III is an attempt to recover for the harm caused by plaintiff Barbara Joan Waye's indictment on federal criminal charges for check kiting. Plaintiffs claim that those charges were the result of defendant's failure to timely notify them of dishonor of checks deposited in the Medfax–Sentinel account in August, 1989, which resulted in the account being overdrawn.

Even if, as plaintiffs contend, the bank did not timely notify plaintiffs that checks deposited in their account were uncollectible, consistent with applicable UCC requirements, plaintiffs are not entitled to recover against the bank for the subsequent filing of criminal charges against plaintiff Barbara Joan Waye. That is not the type of harm compensable under the UCC. See: 13 Pa.Cons.Stat.Ann. § 4103(e), 4212(d) and 4213(c).

Further, even if, as plaintiffs allege, the bank failed to exercise ordinary care in ad-

vising plaintiffs within the time period required that the checks deposited were uncollectible, that failure does not bar the bank from charging back plaintiffs' account for the uncollectible items. See: *In re Cohn Brothers, Inc.*, 45 B.R. 723 (M.D.Pa.1985).

We will, therefore, grant summary judgment in defendant's favor on Count III of the complaint.

### Claims for libel and slander

■ Count V of plaintiffs' complaint is a claim for libel and slander based on comments which appeared in a newspaper article published in The Daily Review in October, 1991. Plaintiff[4] claims that comments attributed to Harold Fravel, an auditor with Commonwealth Bank, are defamatory. The article reports plaintiff Barbara Joan Waye's indictment by a grand jury on federal criminal charges for check kiting. Most of the article consists of information attributed to the United States Attorney regarding the charges on which plaintiff was indicted. Several paragraphs of the article relate the background of plaintiff Barbara Joan Waye's indictment, and it is those portions which plaintiff alleges are defamatory. They state:

> The alleged fraud was reported to federal authorities exactly two years ago Tuesday by an auditor with Commonwealth Bank in Williamsport.

> The auditor, Harold Fravel, reported that the audit department reported a check-kiting scheme at the Sayre office on Oct. 16, 1989, involving a check in the amount of $26,150 made out to Medfax–Sentinel drawn from a Waukeegan, Ill., bank.

> Medfax–Sentinel is a Waverly–based patient education publishing company of which Mrs. Waye is president.

> Fravel said all the checks involved in the scheme were returned to the Illinois bank and there was no loss reported by Commonwealth.

> Fravel said under banking regulations, the institution that discovers the alleged scheme suffers no loss.

> "We found it out, so we suffered no loss," said Fravel.

(Plaintiffs' complaint, exhibit "I").

Plaintiff alleges that Fravel's comments are libelous because he disclosed "opinions" about her guilt and "insinuated ... that although Defendant suffered no loss, the Plaintiffs' bank in Waukegan, Illinois suffered the loss which Defendant knew not to be true as no bank suffered any loss as a result of the Plaintiffs' conduct." (Plaintiffs' complaint, p. 10)

Under no plausible interpretation do the comments made by Fravel constitute libel. Under Pennsylvania statutory law, a plaintiff must prove seven elements to establish a *prima facie* case of defamation:

1. The defamatory character of the communication;
2. Its publication by the defendant;
3. Its publication to the plaintiff;
4. The understanding by the recipient of its defamatory meaning;
5. The understanding by the recipient of it as intended to be applied to the plaintiff;
6. Special harm resulting to the plaintiff from its publication;
7. Abuse of a conditionally privileged occasion.

42 Pa.C.S.A. § 8343.

■ Only statements of fact can afford a basis for a defamation action. Expressions of opinion cannot. Statements of fact and opinion intermingled can give rise to a claim based on the factual portions of the statement. *Dougherty v. Boyertown Times*, 377 Pa.Super. 462, 547 A.2d 778, 782–83 (1988) and *Restatement (Second) of Torts*, § 566.[5]

---

**4.** Although plaintiffs do not indicate in their complaint which counts are brought by both plaintiffs and which are brought by only one of the two, certain claims, such as the claim for libel could potentially exist as to only one of the plaintiffs. Only Barbara Joan Waye could potentially have a claim for libel, since only she is

mentioned in the article, and criminal charges of check kiting were filed against her only.

**5.** *Restatement (Second) of Torts*, § 566 provides:

> Defamatory communication may consist of a statement in the form of an opinion, but a

To establish the defamatory character of a statement, a plaintiff must show that the statement in question tends to harm his or her reputation, lower him or her in the estimation of the community, or deter other persons from associating or dealing with him or her in a professional or business relationship. *Dougherty, supra,* 547 A.2d at 783.

Whether the challenged statements are capable of a "defamatory meaning" is determined, preliminarily, by the court. *Dougherty, supra,* 547 A.2d at 783. If the challenged statements can reasonably be construed as defamatory, the plaintiff has established a *prima facie* case and is entitled to try the issues raised. *Dougherty, supra,* 547 A.2d at 783. If the court is confronted with a situation in which the statements in question are susceptible to several interpretations, some of which are benign, some of which are not, the jury should decide how the statement is likely to be interpreted by the intended audience. *Dougherty, supra,* 547 A.2d at 783.

The statements attributed to Fravel are not defamatory. All that Fravel does is recount the events which led up to plaintiff's indictment on federal charges, including Commonwealth's discovery of suspected illegal activity and notification of federal authorities. Contrary to plaintiff's allegations, Fravel did not offer an opinion as to Barbara Joan Waye's guilt or innocence. Moreover, even if he did, it could not form the basis of a claim for defamation. *Dougherty, supra,* 547 A.2d at 782–83.

The only other statement which plaintiff targets as the basis for her defamation claim is Fravel's statement that Commonwealth suffered no loss as a result of the kiting scheme. Plaintiff turns this statement to contend that Fravel inferred that the Illinois

bank involved did, therefore, suffer a loss. Plaintiff contends that this is not so, and that the Illinois bank did not suffer any financial loss as a result of her conduct. The first flaw in plaintiff's claim is that Fravel does not say what plaintiff contends he did. Second, even if he had said that the Illinois bank sustained a financial loss, that statement is not defamatory to the plaintiff.

Plaintiff's libel claim is also barred by the statute of limitations. Under Pennsylvania law, claims for libel must be filed within one year of the date the cause of action arises and the plaintiff knows, or reasonably should have known, of the allegedly defamatory communication. *Andrews v. Time, Inc.,* 690 F.Supp. 362, 365 (E.D.Pa. 1988); *Gallucci v. Phillips & Jacobs, Inc.,* 614 A.2d 284 (Pa.Super.Ct.1992) and 42 Pa. Cons.Stat.Ann. § 5523.[6]

The newspaper article in which the comments about plaintiff's criminal indictment appeared was published in October, 1991, more than one year prior to the filing of this action. Plaintiffs did not file this action until March 2, 1993. In addition to its other short-comings, plaintiff's libel claim is, therefore, also time-barred.

For all of these reasons, plaintiff's libel claim does not survive defendant's Rule 12(b)(6) motion and will be dismissed for failure to state a cause of action.

### Claim for punitive damages

Count IV of plaintiffs' complaint is a claim for punitive damages based on defendant's alleged "outrageous, vindictive, willful, malicious, and so extreme and careless [conduct] as to indicate a wanton disregard for the rights of the plaintiffs". No facts are alleged in support of any of these legal conclusions.

---

statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion. Comment B to section 566 provides:

The second kind of expression of opinion, or the mixed type, is one which, while an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication. Here the expression of the opinion gives rise to

the inference that there are undisclosed facts that justify the forming of the opinion expressed by the defendant....

6. Section 5523 provides, in relevant part:

The following actions and proceedings must be commenced within one year:

(1) An action for libel, slander, or invasion or privacy ...

42 Pa.Cons.Stat.Ann. § 5523.

Punitive damages "are awarded to deter outrageous and malicious conduct and to deter a wrongdoer from engaging in similar conduct in the future." *Garden State Tire Realty Corp. v. R.K.R. Hess Associates, Inc.*, 762 F.Supp. 92, 93 (M.D.Pa.1990). To justify an award of punitive damages, there must be proof of acts "done with bad motive or with reckless indifference to the interest of another. . . . [T]he plaintiff must show wilful, intentional and malicious conduct on the part of the defendant." *Id., citing Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co.*, 607 F.Supp. 361 (E.D.Pa.1985) and *Allstate Insurance Company v. A.M. Pugh Associates, Inc.*, 604 F.Supp. 85 (M.D.Pa.1984). See also: *Restatement of Torts (Second)*, § 908.

"Punitive damages may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." *McDaniel v. Merck, Sharp & Dohme*, 367 Pa.Super. 600, 533 A.2d 436 (1987), citing *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985) (per Hutchinson, J. with one justice concurring and four justices concurring in the result).

Additionally, punitive damages are recoverable only under a tort-based cause of action. Such damages are not recoverable under a contract-based cause of action. *White v. Moses Taylor Hospital*, 763 F.Supp. 776 (M.D.Pa.1991) and *Tudor Development Group, Inc. v. United States Fidelity & Guaranty Co.*, 692 F.Supp. 461, 466 (M.D.Pa. 1988).

Nothing alleged by plaintiffs can sustain a claim for punitive damages. Nothing is even alleged to substantiate the claim that defendant acted willfully, maliciously, or outrageously.

Further, there are no substantive claims remaining. Punitive damages are an element of damages, not an independent cause of action, and as such, cannot stand alone. If the cause of action for compensatory damages to which they are linked is dismissed, the punitive damage claim must be dismissed as well. *White v. Moses Taylor Hospital*, 763 F.Supp. 776 (M.D.Pa.1991); *Kirkbride v. Lisbon Contractors, Inc.*, 521

Pa. 97, 555 A.2d 800, 802 (1989) and *Rhoads v. Heberling*, 306 Pa.Super. 35, 451 A.2d 1378, 1383 (1982).

We will, therefore, enter summary judgment in defendant's favor on plaintiffs' claim for punitive damages.

### PLAINTIFFS' MOTION TO STRIKE

Plaintiffs move to strike various statements made in defendant's brief filed in support of its motion for summary judgment. The "statements of fact" which plaintiffs move to strike are either legal argument or facts which are not material to the disposition of the pending motion. (See: Record document no. 15, pp. 1–6) Plaintiffs' motion to strike will, therefore, be denied.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. Defendant's motion (record document no. 6) is considered a motion for summary judgment and is granted.

2. Summary judgment is entered in defendant's favor on all claims asserted by plaintiffs.

3. Plaintiffs' motion to strike (record document no. 15) is denied.

4. The Clerk of Court is directed to enter final judgment in favor of defendant and against plaintiffs, and to close this file.