547 A.2d 778

**Richard J. DOUGHERTY, D.C., Appellant,**

**v.**

**The BOYERTOWN TIMES, a/k/a The Times of the Boyertown Area and Berks–Mont Newspapers, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued April 20, 1988.

Filed Sept. 14, 1988.

464

Audrey L. Jacobsen, Norristown, for appellant.

Arthur R. Tilson, Ambler, for Berks–Mont, appellees.

Before OLSZEWSKI, KELLY and HOFFMAN, JJ.

KELLY, Judge:

This is an appeal from an order in the Court of Common Pleas of Montgomery County denying the post-trial motions of plaintiff/appellant, Richard J. Dougherty, D.C. (hereinafter "Dougherty") and affirming the trial court's grant of defendant/appellee, The Boyertown Times, a/k/a The Times of the Boyertown Area and Berks–Mont Newspapers, Inc.'s (hereinafter "newspaper") motion for compulsory non-suit. We reverse and remand the case for a new trial.

## FACTS AND PROCEDURAL HISTORY

Dougherty is a doctor of chiropractic medicine. In 1976, Dougherty and his wife Barbara purchased a property in rural Pennsylvania, near Boyertown and Gilbertsville, where he intended to establish a private chiropractic practice. The property was converted to a home for the Doughertys and a chiropractic office, which opened in late 1977. George Gumbrell became one of Dougherty's patients and made approximately ten visits to Dougherty in April and May of 1981. On July 2, 1981, Mrs. Gumbrell sent a letter to Donald L. Webb, the editor of the newspaper, expressing complaints concerning her husband's experience with Dougherty. Webb contacted Mrs. Gumbrell to discuss the letter with her. He suggested that she rewrite the letter, omitting certain portions which he felt were improper. The following letter was submitted by Mrs. Gumbrell and subsequently published in the July 23, 1981 edition of the newspa-

per, a paper with a Boyertown/Gilbertsville circulation, in the Letters to the Editor section, entitled "Patient complains about fees":

To the editor:

I am writing this letter to tell you and the people of the area about our experience with Dr. Richard Dougherty, Chiropractor, whose home and office are located at Middle Creek Road and Route 73, Gilbertsville. It is my hope that others will profit by our experience.

On Wednesday, April 29, 1981, we received a call from Dr. Dougherty's secretary, Wanda, asking us to make an appointment because one of their patients had told them that my husband had a back problem. The doctor encourages his patients to recruit others. Since my husband was feeling bad, we agreed and saw the doctor that afternoon. When we asked what the charges would be, Wanda said $15 per visit. She also asked if we had insurance and when we told her the insurance would pay $7 per visit, she told us to pay $8 per visit, which we did. My husband went to Dr. Dougherty a total of 10 times from April 29 to May 22. During that time he became worse and had to go to another doctor for treatment. On June 26, we received a statement from the insurance company that Dr. Dougherty had billed them for $198 and they had paid him $118. Since we had already paid him $80 and the insurance paid him $118. That's $198. However, 10 visits at $15 a visit equals $150, a difference of $48. When I called about the extra charges, Wanda said that the first visit is always $30 (she never mentioned that before) and the second visit was $23 because the doctor went over the X-rays with us and that was considered an extended visit. When I pointed out that we were still being overcharged by $25, she said she would have to talk to the doctor. When I called today, July 1, she told me the extra $25 was for analyzing the X-rays and no money would be refunded to us.

Now I ask you, have you ever heard of a chiropractor who charges $30 for the first visit, $23 for an extended

visit because he looked at X-rays, and $25 for analyzing those same X-rays? We were told that the charges would be $15 per visit. No other charges were ever mentioned until the insurance company overpaid the bill.

I would like to warn others to beware of extra charges and treatments which, at least for us, were ineffective and possibly harmful.

> Sincerely,
> Name Withheld.

The first paragraph of Mrs. Gumbrell's first letter to Webb originally stated the following:

I am writing this letter at the suggestion of [a named third party] to tell you and the people of the area about our experience with Dr. Richard Dougherty, Chiropractor, whose home and office are located at Middle Creek Road and Rt. 73, Gilbertsville, Pa. It is my hope that others will profit by our experience and avoid being cheated as we have been.

(Exhibit B of Appellee's Brief). The phrase "at the suggestion of [a named third party]" was deleted at Webb's suggestion. He felt the matter was between Mrs. Gumbrell and Dougherty and it would be inappropriate to involve a third party. (N.T. 12/8/86 at 47). Mrs. Gumbrell also omitted "cheated" at Webb's suggestion. The last paragraph of Mrs. Gumbrell's first letter to Webb contained the following sentence. "All these charges are bad enough, but to deliberately mislead us is inexcusable and unethical to say the least." (Exhibit B of Appellee's Brief). Mrs. Gumbrell removed this sentence at Webb's suggestion. Finally, Mrs. Gumbrell substituted "my husband" for "George" in the second letter; thus rendering the letter anonymous in form and content. Other than these changes, the second letter which was published was the same as the first letter.

Prior to its publication, Webb had sent a copy of the letter to Dougherty, with Mrs. Gumbrell's name deleted. Webb asked Dougherty to consider responding to the letter. When Webb received no reply from Dougherty, he contact-

ed him by phone, again requesting a written response. Dougherty declined. Neither Webb nor Dougherty specifically identified the Gumbrells as the complaining patient. After discussing the letter personally with Dougherty, Webb published the letter.

On June 2, 1982, Dougherty filed a complaint against appellee seeking compensatory and punitive damages. The complaint alleged that the letter was defamatory and that as a result of its publication, Dougherty had suffered, among other damages, a decline in his chiropractic practice.

At pre-trial conference, Dougherty isolated for the court the specific aspects of the letter which were alleged to be defamatory:

a. "My husband went to Dr. Dougherty a total of ten times from April 29 to May 22. During that time he became worse and had to go to another doctor for treatment."

b. The extensive discussion during the course of the letter with reference to the various charges made by the plaintiff for his services.

c. "I would like to warn others to beware of extra charges and treatments which, at least for us, were ineffective and possibly harmful."

The case was tried before a jury on December 5, 8, 9 and 10, 1986. At the conclusion of Dougherty's case, the trial court entered a compulsory non-suit pursuant to the newspaper's motion.

Dougherty filed post-trial motions seeking removal of the non-suit and a new trial. Following oral argument and consideration of the parties' briefs, the trial court denied Dougherty's post-trial motions in an order dated May 7, 1987. Dougherty filed a timely appeal to this Court. Dougherty has raised four issues for consideration on appeal:

Did the lower court err by granting a compulsory non-suit after determining that the published letter was capable of a defamatory interpretation by the jury?

Did the lower court err by determining that certain statements in the published letter were opinions based upon disclosed facts?

Did the lower court err by ruling that the subject matter of the letter was a matter of public concern and by imposing the burden of proving falsity upon the plaintiff?

Did the lower court err by itself finding that the evidence did not establish the negligence of defendant under the facts and circumstances of this case?

## I.

The standard of review in an appeal of an order granting a compulsory non-suit is well-settled:

> ... [P]laintiff must be given the benefit of every fact and reasonable inference arising from the evidence. All conflicts in the testimony must be resolved in plaintiff's favor and the entry of the compulsory nonsuit is only supportable in a clear case where the facts and circumstances have as the only conclusion the absence of liability.

*Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 595, 437 A.2d 1198, 1200 (1981) (citations omitted). "When a compulsory nonsuit is entered, lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement." *Scott v. Purcell,* 490 Pa. 109, 112–113, 415 A.2d 56, 58 (1980) *citing McAuliffe v. Constantine,* 228 Pa.Super. 52, 54, 323 A.2d 158, 159 (1974). "A compulsory nonsuit may be entered only in a clear case where the facts and circumstances lead unerringly to but one conclusion." *Speicher v. Reda,* 290 Pa.Super. 168, 171, 434 A.2d 183, 185 (1981) *citing Cornell Drilling Co. v. Ford Motor Co.,* 241 Pa.Super. 129, 135, 359 A.2d 822, 825 (1976) *citing Paul v. Hess Bros.,* 226 Pa.Super. 92, 94–95, 312 A.2d 65, 66 (1973) (citations omitted); *Fisher v. Findlay,* 319 Pa.Super. 214, 465 A.2d 1306 (1983). "It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for

the jury to say reasonably that the preponderance favors liability." *Speicher, supra,* 290 Pa.Superior Ct. at 171, 434 A.2d at 185 *citing Cornell, supra,* 241 Pa.Superior Ct. at 135, 359 A.2d at 825. Guided by this standard, we turn to the issues Dougherty has raised on appeal.

 Before addressing the merits of the specific issues raised in the instant appeal, we note the following general principles which apply in defamation cases of this nature. Pursuant to 42 Pa.C.S.A. § 8343(a), in a defamation action a plaintiff has the burden of proving:

(1) the defamatory character of the communication;

(2) its publication by the defendant;

(3) its application to the plaintiff;

(4) the understanding by the recipient of its defamatory meaning;

(5) the understanding by the recipient of it as intended to be applied to the plaintiff;

(6) special harm resulting to the plaintiff from its publication;

(7) abuse of a conditionally privileged occasion.

In *Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 483 A.2d 456 (1984), this Court held that: "a plaintiff in libel in Pennsylvania need not prove special damages or harm in order to recover; he may recover for any injury done his reputation and for any other injury of which the libel is the legal cause." 334 Pa.Superior Ct. at 328, 483 A.2d at 474. Pennsylvania has adopted the rule of Restatement (Second) of Torts, § 569 (1977), that all libels are actionable without proof of special harm. *Curran v. Philadelphia Newspapers, Inc.,* 376 Pa.Super. 508, 546 A.2d 639 (1988).

 A private figure plaintiff cannot recover damages without some showing that the media defendant was at fault in publishing the challenged statements. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Where a newspaper publishes speech of public concern, a private figure plaintiff cannot recover damages without also showing that the challenged statements are false. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S.

767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). We shall now address the particular issues raised by Dougherty on appeal.

## II.

The first issue raised by Dougherty addresses the determination by the trial court that the published letter was capable of a defamatory interpretation by the jury. In an action for defamation it is the court's duty to make the initial determination if the challenged statements are capable of a defamatory meaning. *Thomas Merton Center v. Rockwell International Corp.,* 497 Pa. 460, 442 A.2d 213 (1981), *cert. denied,* 457 U.S. 1134, 102 S.Ct. 2961, 73 L.Ed.2d 1351 (1982); *Corabi v. Curtis Publishing Company,* 441 Pa. 432, 273 A.2d 899 (1971); *Agriss, supra; Dunlap v. Philadelphia Newspapers, Inc.,* 301 Pa.Super. 475, 448 A.2d 6 (1982).

> The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. The words must be given by judges and juries the same significance that other people are likely to attribute to them.

*Corabi, supra,* 273 A.2d at 907, *quoting Boyer v. Pitt. Publishing Co.,* 324 Pa. 154, 157, 188 A. 203, 204 (1936); *Gordon v. Lancaster Osteopathic Hospital Association, Inc.,* 340 Pa.Super. 253, 489 A.2d 1364 (1985); *Agriss, supra,* 334 Pa.Superior Ct. at 306, 483 A.2d at 461–462. The nature of the audience is a critical factor in determining whether a statement is capable of defamatory meaning. "Even where a plausible innocent interpretation of the communication exists, if there is an alternative defamatory interpretation, the issue must proceed to the jury." *Gordon, supra,* 489 A.2d at 1368, *quoting Zelik v. Daily News Publishing Co.,* 288 Pa.Super. 277, 431 A.2d 1046 (1981) and *Brophy v. Philadelphia Newspapers, Inc.,* 281 Pa.Super. 588, 422 A.2d 625 (1980). However, the fact that the challenged statements may annoy or embarrass a person is not sufficient as a matter of

law to create an action in defamation. *Gordon, supra; Agriss, supra; Beckman v. Dunn,* 276 Pa.Super. 527, 419 A.2d 583 (1980). Injury to reputation is judged by the reaction of other persons in the community and not by the party's self-estimation. *Rybas v. Wapner,* 311 Pa.Super. 50, 457 A.2d 108 (1983). Specifically, a communication is defamatory if it "ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession." *Baker v. Lafayette College,* 350 Pa.Super. 68, 76, 504 A.2d 247, 251 (1986) *quoting Thomas Merton Center, supra,* 422 A.2d at 216.

The trial court, in the instant case, initially found that the letter was capable of defamatory meaning but later held that Dougherty had not proven the falsity of the alleged defamatory statements and so the letter could not be considered defamatory. We shall address the falsity issue *infra.* We note here, however, that the letter was clearly capable of defamatory meaning.

■ At the time of publication, Dougherty was a professional practicing in a close-knit rural community. Statements (a) and (c), *supra,* refer to the treatments given by Dougherty as making Mr. Gumbrell's condition worse and as being ineffective and possibly harmful. These statements plainly disparage Dougherty's professional competence. Statement (b), *supra,* refers generally to the charges the Gumbrells received from Dougherty for the treatments. Dougherty admitted at trial that the monetary amounts as stated in the letter were substantially correct. However, Dougherty argued that the letter falsely insinuates that Dougherty intentionally misrepresented the charges and was in fact attempting to commit a fraud upon the Gumbrells and their insurance company. Evaluating the nature of the audience, such a letter, written by a member of this close-knit rural community, was capable of harming Dougherty's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. Moreover, at trial, Dough-

erty presented evidence that his chiropractic practice declined, that he and his wife had been subjected to telephone harassment, and that a rock had been thrown through a window in their home since publication of the letter. Thus, we find that Dougherty had presented evidence from which a jury could infer that the letter was not only capable of defamatory meaning but that it was in fact so understood in the community.

## III.

The next issue we address is Dougherty's third issue; whether the trial court erred by ruling that the subject matter of the letter was a matter of public concern, and consequently, imposing the burden of proving the falsity of the alleged defamatory statements upon Dougherty.[1] Dougherty and appellee agreed that Dougherty was a private figure plaintiff. (N.T. 12/5/86 at 32–33). The trial court ruled, however, that the letter contained matters of public concern because the qualifications and practices of a chiropractor were allegedly at issue and because chiropractors and insurance practices are regulated by statute. Therefore, the trial court found, in accordance with *Philadelphia Newspapers, Inc. v. Hepps, supra,* that despite the fact that Dougherty was a private figure plaintiff, the burden of proving the falsity of the alleged defamatory statements must be borne by Dougherty because the challenged statements involved matters of legitimate public concern.

In *Philadelphia Newspapers, Inc. v. Hepps, supra,* the United States Supreme Court held that the First Amendment requires a private figure plaintiff to prove that defamatory statements are false when he seeks damages against a media defendant for speech of "public concern." Since

1. This issue is addressed before Dougherty's other issues because the trial court, which initially found the letter capable of defamatory meaning, granted the compulsory non-suit since it found that Dougherty had failed to meet his burden of proving falsity with respect to matters which the trial court considered to be of public concern.

that decision, Pennsylvania has not focused on the public/private concern distinction.

The sole Pennsylvania appellate case which did address this distinction was *Matus v. Triangle Publications*[2] which was decided before *Hepps, supra.* In *Matus,* our Supreme Court held that a talk show host who alleged that his wife had been overcharged for snow removal and that the snow remover should not be in the business, was a matter of *private* concern. Our Supreme Court explained:

> This was no contribution 'to robust debate on public issues'; it was by no stretch of imagination a matter of public concern that Gerhart thought he or his wife had been bilked by Matus the evening before; it was but a matter of private pique.

*Matus, supra,* 286 A.2d at 365.

■ The instant case is distinguishable. Dougherty was a practicing chiropractor at the time the letter was published. The letter contained statements which placed Dougherty's ethical and professional character in question. As a practicing chiropractor, Dougherty was subject to the provisions of the "Chiropractic Practice Act."[3] This Act explicitly provides for, *inter alia,* license requirements, examination requirements, continuing education and penalties for violations of the provisions of the Act. By this Act, the legislature has implicitly stated that the quality of chiropractic services rendered in this Commonwealth is a matter of public concern.

The trial court, in holding that the subject matter of the letter was of public concern, relied upon the regulation by statute of the medical profession, specifically chiropractic medicine, and insurance practices. "These legislatively imposed regulations give credence to a holding that such matters concerning both physicians and insurance are mat-

2. 445 Pa. 384, 286 A.2d 357 (1971) *cert. denied* 408 U.S. 930, 92 S.Ct. 2494, 33 L.Ed.2d 343 (1972), *overruled on other grounds,* 506 Pa. 304, 485 A.2d 374 (1984).

3. "Chiropractive Practice Act," 63 P.S. §§ 625.101 to 625.1106, 1986, Dec. 16, P.L. 1646, No. 188, replaced the "Chiropractic Registration Act of 1951," 63 P.S. §§ 601 to 624, 1951, Aug. 10, P.L. 1182, § 1.

ters of utmost public concern...." (Trial Ct.Op. at 12). We hold that the subject matter of the letter, *i.e.* the qualifications and practices of a chiropractor, involved matters of public concern, therefore, we need not address the trial court's reasoning which refers to insurance practices.[4]

As a result of our finding that the challenged statements involved matters of public concern, and of the parties' stipulation that Dougherty is a private figure, we find further that the burden of proving the falsity of the alleged defamatory statements was properly imposed upon Dougherty by the trial court in accordance with the United States Supreme Court's holding in *Philadelphia Newspapers, Inc. v. Hepps, supra.*

## IV.

Dougherty also contends that the lower court erred by determining that the following two statements were opinions based solely upon disclosed facts and therefore not actionable:

(a) I would like to warn others to be aware of extra charges and treatments which at least for us were ineffective and possibly harmful.

(c) During that time he became worse and had to go to another doctor for treatment.

Whether a particular statement constitutes a fact or an opinion is a question of law for the trial court to determine. *Veno v. Meredith,* 357 Pa.Super. 85, 92, 515 A.2d 571, 575 (1986) *quoting Braig v. Field Communications,* 310 Pa.Super. 569, 579, 456 A.2d 1366, 1372 (1983) *cert. denied* 466 U.S. 970, 104 S.Ct. 2341, 80 L.Ed.2d 816 (1984). In *Braig* this Court adopted Section 566 of the Restatement (Second) of Torts, *supra,* entitled Expression of Opinion, which provides as follows:

4. We note that whether the regulation by statute of insurance practices is sufficient to render this single incident of alleged medical insurance fraud a matter of public concern is not clear; nor is it apparent that *Matus* is materially distinguishable in this respect.

A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion. Comment (b) of § 566 explains the two types of expressions of opinion:

(1) The pure type—which "occurs when the maker of the comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character."

(2) The mixed type—which "while an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication. Here the expression of opinion gives rise to the inference that there are undisclosed facts that justify the forming of the opinion expressed by the defendant."

Restatement (Second) of Torts, § 566, comment (b). Comment (c) of § 566 explains the constitutional significance of the distinction explained in comment (b):

A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently. The difference lies in the effect upon the recipient of the communication. In the first case, the communication itself indicates to him that there is no defamatory factual statement. In the second, it does not, and if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability. The defendant cannot insist that the undisclosed facts were not defamatory but that he unreasonably formed the derogatory opinion from

them. This is like the case of a communication subject to more than one meaning. As stated in § 563, the meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express.

Restatement (Second) of Torts, § 566, comment (c).

Thus, the trial court must determine whether the challenged statement is an opinion or a fact. If the challenged statement is an opinion, it is actionable only if it "may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Veno*, *supra*, 357 Pa.Superior Ct. at 93, 515 A.2 at 575, *quoting Beckman*, *supra*, 276 Pa.Superior Ct. at 535, 419 A.2d at 587, *citing* Restatement (Second) of Torts, § 566. With these principles in mind, we proceed to an examination of the challenged statements.

The statement—"I would like to warn others to be aware of extra charges and treatments which at least for us were ineffective and possibly harmful"—was found by the trial court to be "a statement of opinion by the author of the letter based upon the facts that are disclosed or assumed in the letter." (Trial Ct.Op. at 7).[5] In the trial court's opinion the statement referred only to the facts in the letter and did not relate to or suggest undisclosed facts. The trial court then held as a matter of law that the challenged statement was not actionable.

■ The portion of the statement referring to extra charges appears to be based upon the facts alleged throughout the letter regarding the billing dispute. While the alleged facts may be actionable if calculated to convey a false impression, we agree that the opinion expressed regarding those facts is not by itself actionable.

■ Giving Dougherty the benefit of inferences to which he is entitled, we disagree, however, with the trial court's conclusion that the second part of that statement, "which at least for us were ineffective and possibly harmful," re-

5. The language, "assumed in the letter," would appear to qualify and undermine the trial court's holding that the challenged statement is an opinion based *solely* upon disclosed facts.

ferred only to the facts disclosed in the letter. The letter does not disclose any information regarding the treatments Dougherty gave to Gumbrell. The nature and frequency of the treatments as well as Gumbrell's condition before, during and after these treatments are never addressed. The letter never discloses whether Gumbrell expressed his concerns to Dougherty. The reader of this letter could reasonably infer from the "warning" that Dougherty subjected Gumbrell to treatments which were ineffective, harmful and possibly painful, while he intentionally misrepresented his fees in order to make more money. Since the author of the letter was the patient's wife, a reader of the letter could easily infer that the wife, being in such close relation to the patient, was in a good position to know undisclosed facts concerning the treatments upon which she based her opinion. Thus, we find that the second part of the statement quoted above is a mixed opinion which could reasonably be interpreted to imply undisclosed defamatory facts, and is therefore actionable.

The statement—"During that time he became worse and had to go to another doctor for treatment"—was also found by the trial court to be an opinion based on disclosed facts and therefore not actionable. The trial court in its opinion states:

> ... [J]ust prior to the grant of the nonsuit that it was possible from the evidence for the jury to determine that the statement that, 'he became worse,' was false. However, in light of the fact that the second portion of the statement, 'that he had to go to another doctor,' was a true disclosed fact on which the opinion was based, it is protected and therefore not defamatory.

(Trial Ct.Op. at 16).

At trial, evidence was presented which established that Gumbrell did go to another doctor. However, it does not follow that the reader of the letter would assume that the opinion expressed, i.e. Gumbrell's condition had become worse, was based solely on the fact that he went to another doctor. The reader of the letter was not informed about the

treatments Gumbrell received from Dougherty; how these treatments made Gumbrell's condition worse; Gumbrell's condition before, during or after the treatments; the medical opinion of the doctor who detected that Gumbrell's condition had become worse; the treatment Gumbrell received to correct this condition; a specific description of the worsening condition; whether Gumbrell had discussed his condition and concerns with Dougherty; whether Gumbrell had experienced increasing amounts of pain and discomfort and voiced this to his wife; or how the treatments given by Dougherty caused Gumbrell's condition to worsen. The reader of the letter could reasonably infer from the opinion expressed that the author of the opinion, *i.e.* the patient's wife, had specific undisclosed information as to how Dougherty's treatments caused Gumbrell's condition to worsen so that Gumbrell had to seek relief by going to another doctor. Though the challenged statement is an opinion in form, it may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion. As such, it is a mixed opinion and is therefore actionable.

## V.

Dougherty's final contention is that the lower court erred by finding that the newspaper was not negligent, as a matter of law, in the publication of the letter. The lower court acknowledged the importance of allowing the jury to determine the issue of negligence in most instances, but held that in this case, "... there is no legally sufficient evidence of defendant's negligence discernible from the record" and granted the newspaper's motion for a compulsory non-suit. (Trial Ct.Op. at 21). The lower court found that Webb, editor of the newspaper, used reasonable care and due diligence in investigating the contents of the letter before the letter was published.

Both parties agree that Dougherty is a private figure plaintiff and that the negligence standard is the proper standard of proof in this action. In *Gertz, supra,* the United States Supreme Court held:

... so long as they do not impose liability without fault, the states may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.

*Gertz, supra,* 418 U.S. at 347, 94 S.Ct. at 3010. In *Hepps, supra,* the United States Supreme Court stated:

... Pennsylvania requires a private figure who brings a suit for defamation to bear the burden of proving negligence or malice by the defendant in publishing the statements at issue.

*Hepps, supra,* 475 U.S. at 770, 106 S.Ct. at 1560. In *Rutt v. Bethlehem's Globe Publishing Co.,* 335 Pa.Super. 163, 484 A.2d 72 (1984), this Court held:

... a private figure defamation plaintiff, seeking compensation for harm inflicted as a result of the publication of defamatory matter, must prove that the defamatory matter was published with 'want of reasonable care and diligence to ascertain the truth' or, in the vernacular, with negligence.

*Id.,* 335 Pa.Superior Ct. at 186, 484 A.2d at 83.

A court may grant a non-suit only when the plaintiff's evidence together with all reasonable inferences of fact arising therefrom, viewed in the light most favorable to the plaintiff, is insufficient to make out a *prima facie* case of negligence. *Watkins v. Sharon Aerie No. 327 Fraternal Order of Eagles,* 423 Pa. 396, 398, 223 A.2d 742, 743 (1966); *Stenson v. Rechutti,* 416 Pa. 548, 207 A.2d 760 (1965). Negligence is a question for the jury to determine upon proper instruction. The court should not remove the question from the jury unless the facts leave no room for doubt. *Papa v. Pittsburgh Penn–Center Corporation,* 421 Pa. 228, 218 A.2d 783 (1966); *Spraggins v. Shields,* 310 Pa.Super. 408, 456 A.2d 1000 (1983).

In the instant case, Webb stated that generally when a letter to the editor was received by the newspaper, the first determination to be made was whether what was said was true. (N.T. 12/8/86 at 44). However, Webb admitted that he never spoke directly with Mr. Gumbrell, who was Dough-

erty's patient, (N.T. 12/8/86 at 51–52), nor attempted to find out if Mr. Gumbrell's condition had actually become worse due to Dougherty's treatment. (N.T. 12/8/86 at 51; N.T. 12/10/86 at 115). Webb conceded that he believed that Dougherty was a professional whose reputation could be harmed in a small degree by the publication of the letter. (N.T. 12/10/86 at 117). Nonetheless, Webb admitted that he did not specifically identify the Gumbrells to Dougherty, as the complaining patient when Webb asked Dougherty to respond to letter. (N.T. 12/8/86 at 63–64). Webb admitted that he did not talk with Wanda, Dougherty's receptionist who handled the billing for services challenged in the letter. (N.T. 12/8/86 at 56). Webb acknowledged that he never inquired as to the identity of the other doctor who treated Mr. Gumbrell. (N.T. 12/10/86 at 115). He conceded that he never considered or discussed the physician/patient privilege with Dougherty and its potential effect on Dougherty's willingness and ability to respond to the allegations. (N.T. 12/8/86 at 65). He admitted that he never informed Dougherty that if Dougherty had a dispute with the facts contained in the letter, there was a possibility that it would not have been published. (N.T. 12/8/86 at 57, 61–65).

We find that Dougherty presented sufficient evidence from which a jury could infer that the newspaper failed to act with reasonable care and due diligence. Because there is room for doubt as to whether or not the newspaper was negligent, the motion for compulsory nonsuit should not have been granted. The question of negligence should have been permitted to go to the jury.

## CONCLUSION

We find that the published letter is capable of defamatory meaning. A reasonable person could infer from the letter that Dougherty was incompetent as a chiropractor and unethical as a businessman. The subject matter of the published letter involved matters of public concern, *i.e.* the professional competence of a licensed chiropractor. As a private figure plaintiff seeking damages from a media

defendant for speech relating to matters of legitimate public concern, Dougherty bore the burden of proving the falsity of the challenged defamatory statements. Here, Dougherty presented sufficient evidence to raise a jury question as to the falsity of the challenged statements; consequently, this issue should have gone to the jury. Two of the challenged statements were expressed in the form of opinions. Because the opinions may reasonably be understood to be based at least in part on undisclosed defamatory facts, they were therefore actionable. The newspaper had a legal obligation to exercise reasonable care and due diligence to ascertain the truth or falsity of the potentially defamatory statements before publishing the letter. Dougherty presented enough evidence to create a jury question as to whether the newspaper fulfilled this duty; therefore, this issue should have been left to the jury to decide.

Based upon the foregoing, we find that the non-suit was improvidently granted; accordingly, we vacate the non-suit and remand for a new trial.

HOFFMAN, J. concurs in the result.