## Today's Housing v. Times Shamrock Communications Inc.

338

*James A. Wells,* for plaintiff.

*J. Timothy Hinton Jr.* and *Todd J. Cook,* for defendants.

SCHMEHL, J.L., *P.J.,* May 17, 2010—Appellant/plaintiff Today's Housing appeals from this court's December 7, 2009 order, which granted appellees'/defendants' motion for summary judgment and dismissed with prejudice all of appellant's claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant brought suit by filing a complaint on March 3, 2005. Therein, appellant brought five claims sounding in defamation, and one in commercial disparagement as to all publications. Appellant alleged in part that a series of five newspaper articles, printed by appellees, published from December 17, 2003 through March 5, 2004, and named appellant as the retailer of a defective home and was defamatory. Appellant further alleged that the five articles collectively constituted commercial disparage-

ment, in large part because the articles suggested or implied that appellant was responsible for the manufacture, design and assembly of the defective home. Finally, appellant claimed the series of allegedly defamatory articles caused appellant substantial injury and damage.

On November 28, 2008, after more than two years of inactivity on the case, a termination notice was issued. Appellant filed a statement of intention to proceed on January 7, 2009, following which there was no further activity on the case until appellees filed a motion for summary judgment on September 30, 2009. Appellant filed a response in opposition thereto on October 30, 2009. Appellees filed a brief in support of the motion for summary judgment on November 6, 2009.

Thereafter, this court entered a December 7, 2009 order which granted summary judgment in favor of all appellees, and dismissed appellant's claims with prejudice. Appellant then proceeded to file the following pleadings in succession: on December 10, 2009, a brief in opposition to the motion for summary judgment; on December 17, 2009, a motion for reconsideration of this court's order granting summary judgment; and on January 6, 2010, an appeal to the Superior Court of Pennsylvania. Appellant filed a concise statement of errors complained of on appeal on February 1, 2010.

After rescheduling several argument dates to hear argument on appellant's motion for reconsideration, beginning with one scheduled for December 30, 2009, this court held argument on February 22, 2010. Argument on appellant's motion for reconsideration was held by

conference call, and following argument, this court decided to hold the case in abeyance pending the appeal.

## II. DISCUSSION

Appellant complains of the following errors on appeal:

(1) The trial court committed reversible error by granting defendants' motion for summary judgment;

(2) The trial court committed reversible error by determining that the statements at issue constituted matters of public concern and that plaintiff is unable to meet its burden of proving falsity;

(3) The trial court committed reversible error by determining that the statements at issue were true;

(4) The trial court committed reversible error by determining that the statements at issue are not capable of defamatory meaning;

(5) The trial court committed reversible error by determining that the statements at issue constitute expressions of opinion;

(6) The trial court committed reversible error by determining that the statements at issue are true and accurate statements taken from court filings and are therefore within the scope of the fair report privilege;

(7) The trial court committed reversible error by determining that plaintiff is a public figure and unable to prove that defendants acted with actual malice;

(8) The trial court committed reversible error by determining that plaintiff's claim for punitive damages

should be dismissed because plaintiff is unable to prove common law malice; and,

(9) The trial court committed reversible error by granting summary judgment without consideration of the matters set forth in plaintiff's brief in opposition to summary judgment. Moreover, to the extent that the grant of summary judgment resulted from plaintiff's failure to file a timely brief pursuant to the Berks County Local Rules, the grant of summary judgment violated Rule 239(f) of the Pennsylvania Rules of Civil Procedure.

The above errors complained of on appeal all go to the basis for this court's decision to grant summary judgment. As such, this court will discuss the first through eighth errors in combination, and then will discuss the ninth error separately.

## A. *Summary Judgment*

This court found the grant of summary judgment to be appropriate in this case. In reviewing a motion for summary judgment, where there is no genuine issue of any material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Pa.R.C.P. 1035.2. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. We view the record in the light most favorable to the

non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Robertson v. Drexel University,* 991 A.2d 315 (Pa. Super. 2010). Furthermore, the summary judgment procedure serves to pierce the pleadings and assess the proof in order to see if there is a genuine need for trial. *Ertel v. Patriot-News Co.,* 544, Pa. 93, 100, 674 A.2d 1038, 1042 (1996). The grant of summary judgment was appropriate here because this court found, after a review of the pleadings and after argument held, that appellant had not met its burden, in producing sufficient evidence on issues essential to its case and on which it bore the burden of proof and would fail to produce evidence of facts essential at trial.

## B. *Defamation*

The basis for appellant's case was appellant's claim of defamation stemming from each of the five articles published by appellees over the time period of December 17, 2003 through March 5, 2004, a claim which this court found to be unsupported. In order to support an action for defamation, a plaintiff bears the burden of proving the defamatory character of the communication. 42 Pa.C.S. §8343(a). The plaintiff also bears the burden under this statute of proving in part, that the communication applied to the plaintiff and that the defamatory meaning was understood by the recipient. *Id.*

The court serves to determine whether a challenged publication is capable of defamatory meaning, and if it finds it not to be, then there is no reason to proceed to trial. *Tucker v. Philadelphia Daily News,* 577 Pa. 598,

615, 848 A.2d 113, 124 (2004). In evaluating whether a statement is capable of a defamatory meaning, the court considers whether the statement "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him." *Id.* (citing *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 303, 167 A.2d 472, 475 (1960) (quoting Restatement (First) of Torts, §559 (1989))). Libel is the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred, contempt or ridicule. *Id.* (internal citations omitted) "It is not enough that the victim of the [statements] . . . be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society." *Id.* Finally, the court must view the statements in context. *Id.*

Truth is a defense to a defamation action. *American Future Systems Inc. v. Better Business Bureau of Eastern Pa.,* 592 Pa. 66, 77 n.8, 923 A.2d 389, 396 n.8 (2007), citing *Philadelphia Newspapers Inc. v. Hepps,* 475 U.S. 767, 770 (1986). The publication need not be absolutely true, but only substantially true. *Masson v. New Yorker Magazine Inc.,* 501 U.S. 496, 516 (1991). Minor inaccuracies in a publication do not rise to the level of falsity if the gist of the allegedly defamatory statement is true. Further, a statement which is pure opinion is not actionable for defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. *Dougherty v. Boyertown Times,* 377 Pa. Super. 462, 477, 547 A.2d 778, 786 (1988). This court describes each

of the five disputed articles below, in order to evaluate whether the articles were of a defamatory character.

The first article of which appellant complains, at Count 1 of the complaint, was an article published December 17, 2003. The article first refers to appellant at the line "(a) late move-in date was only the beginning of the Kirek's problems with the home's retailer, Today's Housing Inc., Shoemakersville." The court could find no defamation in portraying appellant Today's Housing as the home's retailer when, in fact, appellant claimed itself to be the retailer in the complaint. In the complaint, at paragraph 1, "plaintiff, Today's Housing is a corporation registered under the laws of the Commonwealth of Pennsylvania and *engaged in the business of the sale and maintenance of mobile, manufactured and modular homes . . . .*" (emphasis added) With representations by appellant itself as to its work as a retailer of modular homes, there was no defamatory character to the beginning of the first article.

Later in the same first article, appellant claimed the text was defamatory because it implied that appellant changed the manufacturer's specifications. However, a close reading of the article itself shows that the first party named therein is the home's retailer—appellant. The article continued on to state that aspects of the home were not built to the manufacturer's specifications, and appellant claimed that the implication was that appellant itself built the home. However, the article clearly stated that the home was built by an unspecified party, and a reader can easily draw a distinction between the two parties of the builder and the retailer. Further, the point

at which the article references changes made to the manufacturer's design immediately follows the sentence stating that aspects of the home were not built according to the manufacturer's specifications. As such, the article seems to reference a builder that made changes to the manufacturer's design, rather than the home's retailer.

Further, much of this first article constitutes opinion of the quoted homeowners. The quote "she (homeowner Clara Kerik) believes the company isn't being honest" clearly constitutes opinion of the speaker. A neighbor who remarked that "(w)hen they first started building trailers, they were shoddy" also expressed an opinion that does not constitute defamation on the part of the defendant.

Even if this first article were read to attribute responsibility to appellant for the cited defects in the home, this text does not rise to the level of defamation. This first article certainly could not be read to rise to the level of "harm which . . . grievously fractured his standing in the community of respectable society." The defects in the home would certainly be a problem which any home retailer would need to address, but are an issue which can arise with some frequency in home sales, such that there was nothing in the article that would fracture appellant's standing as a home retailer.

Further, the main problem that would be attributed to appellant was the then-refusal to remedy the problems cited by the homeowners, which does not rise to the level of defamation, and is demonstrated to be a truthful statement in later articles. The article cited to representa-

tives of the state Department of Community and Economic Development (DCED) who described the flaws in the home which included 11 violations of U.S. Department of Housing and Urban Development (HUD) codes. These flaws included detached roof shingles, an improperly ventilated crawl space, an uneven floor, a 1.5" gap where two sections of the house were joined, and a grading that prevented water from moving away from the home. The article also quoted a DCED representative who stated that appellant had made progress in rectifying some of the flaws, with a somewhat positive light cast on appellant. The article also quoted a representative of appellant who stated that the party was aware of the problems, and was working to resolve them, constituting a statement made by appellant, not appellee, and further, demonstrating the veracity of the claims of the flaws in the home. Finally, with respect to the first article, the defects of which the homeowners and the public officials complained were shown in the later articles to be appellant's responsibility, constituted *truth,* and were not defamatory.

The second article of which appellant complained was published on December 30, 2003. This article in great part described another private couple's belief as to state of their home and basis for their original suit. Again, as opinion, there is no defamatory character in this text. In addition, the article describes the counter-suit by appellant based in contract, a statement of fact as to appellant's own legal action, and again not defamatory. Finally, this article also quoted representatives of appellant: statements which themselves could not be defamatory when published by the party bringing suit.

The third article of which appellant complained was published on January 3, 2004. Entitled "Couple's House Woes Gets Attention," this article was similar to the first two, and again did not qualify as defamatory in the court's view. The article again quoted opinions of the homeowners, records by government officials, and flaws in the house which are demonstrated to be accurate in the later articles. Additionally, appellant's own representative was quoted as describing how appellant took responsibility for the flaws complained of. The caption which appellant cited in its complaint was not an inaccurate statement, but merely depicts the sign the couple erected in their front yard, which read that Shoemakersville-based "Today's Housing Inc failed to deliver on promises and left them with a home full of HUD code violations," and had attracted a lot of attention in the past few weeks. The assertion in that sentence is not the newspaper's belief in veracity as to the claims, but is a statement that the sign has attracted attention. Other parts of the article include reference to a BBB spokeswoman who would not release information about complaints against appellant but described most of the complaints as pertaining to repair and service issues. Again, this a truthful accounting—merely a fact as to complaints filed and their type, and did not represent any defamation on the part of the defendants

The fourth article of which appellant complained was published on January 6, 2004. There was nothing within the article that could be characterized as "false, misleading or untrue," as appellant alleged, nor did appellant state with any specificity the manner in which the con-

tents of the article could be deemed "untrue." This article largely quotes a representative of appellant's own corporation—"general manager of a housing firm accused of questionable workmanship is optimistic the issues will be resolved. James S. Miller, who was hired in early November by Today's Housing Inc., Shoemakersville, said he is shifting his focus to the future of the company while trying to iron out mistakes of the past." Miller himself in this article described how appellant worked with dozens of subcontractors for a variety of different jobs, he then says *"most of all retailers (i.e., appellant) use certified set up crews to install the houses . . . . We may have four set up crews that we work with. All of the subcontracted crews are monitored by the project manager, whose job it is to go out and make sure that work is being done in a timely fashion, etc . . . (w)e've sold hundreds of homes in this market for the last six years. Have there been issues? I'm sure there have been, but I can only go forward from here. . . ."* (emphasis added) Certainly, a statement by appellant's own representative does not constitute a statement published by another that can be characterized as defamatory.

Furthermore, the earlier articles focused on the homeowners and their homes, whereas this article showcased appellant as working to resolve the flaws. This fourth article lends further support for the reasonable inference that all the statements in the series of articles were accurate and truthful, in that appellant as the retailer was responsible for the final outcome of the home installation, and subcontracted other parties to come in and install the home. Furthermore, the article directly quotes Miller

later saying "we're not going to deliver a perfect home. These homes are hauled over the highway. There are certain settling issues that are going to take place, so what our paperwork says is that we'll come back and repair your cracks initially, and we might even have to come back after that." Clearly, appellant was the party responsible for any defects, admitted there were defects, admitted responsibility for the defects, admitted responsibility for the repair of those defects, and showed the contents of the five articles to generally be true, at times mere opinion and always non-defamatory.

The fifth article of which appellant complained was published on March 5, 2004. That article further quotes the same representative of appellant corporation, who said he was aware of three violations that still had to be fixed, two dealt with repair work that was done but not up to the standards of the homeowner, and the third involved a support issue that was not addressed in the original inspection and needs to be corrected. Presumably, appellant wouldn't have had a representative making responses directly addressing the allegations and admitting to them if in fact appellant truly thought they were false. This last article is entitled "Home's Deficiencies Being Repaired." The article also references a newly named party, Champion Homes Inc., the home's manufacturer, drawing a clear distinction between the retailer and the manufacturer, and describing how Champion Homes Inc., the home's manufacturer, has joined appellant to review the repair work and how the two companies have come together to make repairs—retailer and manufacturer.

Nothing otherwise is different in this article from the articles already evaluated above as far as not containing any defamatory statements. If anything, this article portrays appellant in a positive light, showing appellant's initiative to remedy errors made in work, and an attempt to build a successful company going forward. This court found the articles were fair, accurate and complete, and gave both sides of the dispute a chance to voice their opinion, and eventually portraying appellant in even a positive light.

Further, although this court declined to consider the public figure/limited purpose public figure argument put forth by appellees in their motion for summary judgment and brief in support thereof, an argument could fairly be made that appellant did posit itself as a limited purpose public figure in their public response via the newspaper to the article and claims by the private family that posted the sign in their yard, as well as by their counter-suit based in contract. Similarly, although this court found it not necessary to consider whether the events at issue in the articles rose to the level of a public matter, an argument could easily be made that the events did constitute public concern due to the involvement of the Department of Housing and Urban Development in issuing violations for the home defects.

As to appellant's ninth and final error complained of on appeal, it was a physical impossibility for this court to consider appellant's brief in opposition to summary judgment, when appellant's brief was filed on December 10, 2009, three days *after* this court had already entered its order of December 7, 2009, granting the motion for

summary judgment. Further, appellees' motion for summary judgment and supportive brief were filed on November 6, 2009, such that appellant had ample time to reply to the motion for summary judgment and failed to do so in a timely manner.

Nonetheless, this court addresses the second half of appellant's final error complained of on appeal. The grant of summary judgment was not entered based on appellant's failure to comply with local rules to file a timely responsive brief. This court granted summary judgment because of appellant's failure over the several years of the case's history to adduce sufficient evidence on issues essential to appellant's case. State and local rules authorized this court to act on the motion for summary judgment following lack of a response from appellant. Appellant claims that the grant of summary judgment was in violation of Pa.R.C.P. 239(f), which states that "(n)o civil action or proceeding shall be dismissed for failure to comply with a local rule." Local Berks County R.C.P. 1035.2(a)(2) governs the time for a non-moving party to respond to a motion for summary judgment, which is in accordance with and refers back to Pa.R.C.P. 1035.3(a) as the basis for the local rule. Both of these rules list the time to respond to a motion for summary judgment as thirty days. Pa.R.C.P. 239(f) has been interpreted to apply to local rules which supersede state procedural rules. See *Boatin v. Miller,* 955 A.2d 424 (Pa. Super. 2008). The local rules here reflect the state rules, and although this court was authorized, per the rules, to enter its decision on summary judgment, it was not the rules alone that made this decision persuasive, but also appellant's

failure to demonstrate there to be any genuine issue of material fact. This court could not have and did not grant summary judgment solely based upon a procedural defect such as appellant's failure to file its response to the motion for summary judgment within 30 days, and instead granted summary judgment on the merits.

In sum, this court found the articles not to have been capable of defamatory meaning, and most certainly not to have risen beyond the level of mere embarrassment or annoyance such that the publications amounted to exposition to public hatred, contempt or ridicule. The articles portrayed appellant in an accurate and fair manner. The last two articles quote appellant's own representative, who admitted appellant's responsibility for the defects in the home. Further, the articles not only portrayed appellant in a fair manner that did not damage appellant's reputation, but the later articles even portrayed appellant in a positive light, in quoting representatives of appellant company, and chronicling the positive work appellant was undertaking. As the later articles in the series of five articles demonstrated, the earlier articles published statements which were clearly not false. A basic tenet of defamation law is that the truth is always a defense.

For all of the above stated reasons, this court respectfully recommends that the instant appeal be denied.

The prothonotary shall forward the remainder of the file to the Superior Court.