J-A16038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JESSIE L. SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MAIN LINE ANIMAL RESCUE, INC., | : | No. 1132 MDA 2018 |
| ET AL. | : | |

Appeal from the Order Entered June 8, 2018
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2012-CV-4739-CV

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: SEPTEMBER 18, 2019**

Appellant, Jessie Smith, appeals from the order entered in the Court of

Common Pleas of Dauphin County sustaining Appellees' preliminary objections

to Appellant's Third Amended Complaint, which raised claims of defamation,

disparagement, false light invasion of privacy, and civil conspiracy based on

Appellees' public statements concerning Appellant's performance as Special

Deputy Secretary of Pennsylvania's Bureau of Dog Law Enforcement.  We

affirm.

The trial court aptly provides the procedural history of the present

matter, as follows:

> Plaintiff/Appellant Jessie L. Smith [hereinafter "Appellant"]
> initiated this action on June 8, 2012, by filing a Praecipe for Writ
> of Summons against Defendants/Appellees Main Line Animal
> Rescue, Inc., William Smith, Teresita Delgado a/k/a Terezita
> Caldoro a/k/a T Hope, Jenny Stephens, Lancaster Newspapers,

_____
*   Former Justice specially assigned to the Superior Court.

Inc., and York Newspaper Company (collectively "[Appellees]"). On June 28, 2102, Appellant filed a Praecipe to Reissue Writ of Summons. Appellees Main Line Animal Rescue, Inc., William Smith, Jenny Stephens, Lancaster Newspapers, Inc., and York Newspaper Company were served via sheriff in the time proscribed [sic] by the law. Service by sheriff was attempted on Appellee Teresita Delgado a/k/a/ Terezita Caldoro a/k/a T Hope a/k/a Theresa Gervase (hereinafter [Appellee] Gervase), but was returned "not found."

On August 14, 2012, Appellant filed a Complaint against Appellees alleging Defamation (Count I), Disparagement (Count II), False Light (Count III), and Civil Conspiracy (Count IV). Following the filing of the Complaint, Preliminary Objections were filed.[] In response, Appellant filed an Amended Complaint on September 20, 2012. Preliminary Objections were again filed.[]

Following oral argument, the court overruled the preliminary objections of Jenny Stephens,[] sustained the preliminary objections of York Newspaper Company,[] Lancaster Newspapers, Inc.,[] and sustained in part the preliminary objections of Appellees Main Line Animal Rescue, Inc. and William Smith.[] Additionally, Appellant's claims against Lancaster Newspapers, Inc. and York Newspaper Company were dismissed with prejudice.[1]

Appellant filed a Second Amended Complaint on March 13, 2013. Once again, Appellees Main Line Animal Rescue, Inc., Jenny Stephens, and William Smith filed preliminary objections. Following oral argument, the court sustained the preliminary objections of Appellees Main Line Animal Rescue, Inc., Jenny Stephens, and William Smith, and afforded Appellant sixty (60) days to conduct pre-Complaint discovery and ninety (90) days to file a third amended complaint.[]

On February 10, 2014, Appellant filed a Third Amended Complaint. Once again, Appellees Main Line Animal Rescue, Inc., Jenny Stephens, and William Smith filed preliminary objections. Following oral argument, the court sustained the preliminary

---

[1] The late Honorable Bernard L. Coates, Jr., entered the order, without accompanying opinion, dismissing with prejudice Appellant's claims against the newspapers.

objections of Appellees Main Line Animal Rescue, Inc., Jenny Stephens, and William Smith, and dismissed the claims against them with prejudice.[]

On July 15, 2015, Appellant filed a Praecipe for Default Judgment against Appellee Gervase for her failure to answer the complaint and subsequent amended complaints. On the same day, a default judgment was entered against Appellee Gervase by the Dauphin County Prothonotary. Thereafter, Appellant filed a Notice of Appeal with the Superior Court of Pennsylvania. The Superior Court subsequently quashed the appeal as premature because Appellant's claims against Appellee Gervase were still pending.[]

Despite the fact that the claims against Appellees Main Line Animal Rescue, Inc. and William Smith were dismissed with prejudice and a default judgment had been entered against Appellee Gervase, Appellant filed a Motion to Compel Settlement on July 20, 2016. On March 8, 2017, the Honorable Scott A. Evans (hereinafter "Judge Evans") denied Appellant's Motion stating that the time to file a motion for settlement had long passed and noted that the preliminary objections of Appellees Main Line Animal Rescue, Inc., and William Smith were previously sustained.[fn]

---

Fn. This case was originally assigned to the Honorable Bernard L. Coates, Jr. who passed away on September 17, 2015. Since litigation in this matter appeared to have stopped after the entry of a default judgment against Appellee Delgado, it was not re-assigned to another judge until Appellant filed her Motion to Compel Settlement in 2016.

---

Appellee Main Line Animal Rescue, Inc., filed an Administrative Application for Status Conference on July 10, 2017, asserting that Appellant had failed to pursue the remaining claims against Appellee Gervase in a timely fashion. Following a status conference, Judge Evans entered an Order directing Appellant to file a Certificate of Readiness for a non-jury trial on the issue of damages within sixty (60) days of the Order. Appellant complied, and a non-jury trial on the issue of damages was scheduled before the Honorable John L. Braxton (hereinafter "Senior Judge Braxton").[]

On March 27, 2018, a non-jury trial on the issue of damages was conducted before Senior Judge Braxton. Appellant appeared with counsel, and Appellee Gervase failed to appear. At the conclusion of the hearing, Senior Judge Braxton afforded Appellant an opportunity to submit post-hearing proposed findings of facts and conclusion of law, which were filed by Appellant on April 10, 2018. Thereafter, Appellee [Jenny] Stephens submitted a response to Appellant's proposed findings of fact and conclusions of law asserting that Appellant failed to inform the court of relevant proceedings that have previously adjudicated the primary issues in this matter, including testimony directly related to Appellant's claims for economic damages.

Trial Court Opinion, 6/8/18, at 1-4.

The trial court examined the record with respect to the claims raised against Appellee Gervase and voided the default judgment against her for two reasons. First, the court determined the Third Amended Complaint, which serves as the basis for the default judgment, failed to include a notice to defend as required by Pa.R.C.P. 1037(b). Second, the court determined it lacked personal jurisdiction over Appellee Gervase because Gervase never received proper service of the complaint or the amended complaints against her.

Not only did the court void default judgment against Gervase, however, it also invoked the doctrine of collateral estoppel to dismiss Appellant's claims against Gervase with prejudice. Specifically, the court took judicial notice of a defamation action filed by Jenny Stephens against Appellant and her attorney in the Court of Common Pleas of Philadelphia County.[2] The basis for Stephens' action was a *Philadelphia Inquirer* article reporting on the present

---

[2] *See Stephens v. Smith and Barbin, Esq.*, No. 418 C.P. Phila. 2013

Dauphin County action and incorporating verbatim averments from Appellant's complaint, a copy of which Appellant's attorney had provided to the *Inquirer*.

Stephens entered into a pre-trial settlement with Appellant, and she subsequently won judgment on the merits against Appellant's attorney following a jury trial. As noted by the trial court herein:

> The Philadelphia Court found, among other things, that '[t]he evidence showed that [Appellant's attorney] acted with actual malice and was unconcerned with the truth or falsity of his statements.' . . . Therefore, by entering the judgment against [Appellant's attorney], the Philadelphia Court found that the material averments in the Dauphin County Complaint, which [Appellant] verified, were false. Additionally, the judgment entered against [Appellant's attorney] reflects a final adjudication that [the attorney] was aware or should have been aware of their falsity at the time he published the Dauphin County Complaint via a Philadelphia Inquirer reporter.
>
> [T]he issues presented in the Dauphin County and Philadelphia County cases are identical in that the Philadelphia Court, by necessity, examined the veracity and truthfulness of the Dauphin County Complaint. Following a multi-day jury trial, a final judgment was entered on the merits by the Philadelphia court. . . . As named Defendants, [Appellant and her attorney] had a full and fair opportunity to litigate the veracity and truthfulness of the Dauphin County Complaint in the Philadelphia County jury trial. Lastly, it is clear that the judgment entered in Philadelphia County is essential to the instant action.
>
> Therefore, [Appellant] is collaterally estopped from pursuing the claims raised in the instant matter, and

> should have discontinued the matter after judgment
> was entered in Philadelphia County.

Trial Court Opinion, at 9-10. This timely appeal followed.

Appellant raises the following issues for our consideration:

1. Did [the trial court] commit reversible error by misapplying the standard to sustain Appellees Main Line, William Smith, and Lancaster's preliminary objections where [Appellant's] complaint complied with the requirements of Pa.R.C.P. 1019?

2. Did [the trial court] commit reversible error when it dismissed [Appellant's] complaint against Appellee Gervase based on the statute of limitations where Appellee Gervase had actual notice of the action?

3. Did [the trial court] commit reversible error by determining [Appellant's] claims were barred by the doctrine of collateral estoppel where it lacked the ability to fully consider the nature of the allegedly related action and Ms. Smith's involvement in that action?

Appellant's brief, at 3.

Our scope and standard of review of a challenge to an order sustaining

preliminary objections is well-settled:

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a *demurrer* test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a *demurrer* should be sustained, it

- 6 -

should be resolved in favor of overruling the preliminary objections.

***Khawaja v. RE/MAX Central***, 151 A.3d 626, 630 (citation omitted). "[W]e rely on the facts as alleged in the complaint, including its exhibits." ***Id.*** at 627 n.1.

Appellant's Third Amended Complaint ("TAC") and attached exhibits alleged the following facts: In 2006, then-Governor Ed Rendell appointed Appellant as Special Deputy Secretary for Dog Law Enforcement within the Pennsylvania Department of Agriculture. According to the TAC, Defendants/Appellees targeted her in a series of defamatory and, at times, profane internet comments accusing her of failing to enforce newly enacted dog laws against a purportedly noncompliant kennel, Lancaster County's Turkey Hill Kennel, because, *inter alia*, she may have been receiving bribes from, or engaged in a sexual relationship with, the kennel owner.

Specifically, the TAC alleged that Defendant/Appellee Theresa Gervase published a blog at "turkeyhillkennel.blogspot.com" in which she routinely criticized Appellant and encouraged her readers to forward her blog entries to multiple private, public, and media outlets. In her blog, she made the following statements over the course of several days:

- The authorities who have the power to enforce these laws have decided to look the other way. Is somebody being paid off or are they just too lazy to do their jobs? . . . . Who does [Turkey Hill Kennel owner Zimmerman] have in his pocket?

- Why did Zimmerman receive a waiver? Money, blow jobs, connections—which one?

- [caption of a stock photo of a horse and buggy] Are [Plaintiff/Appellant] Smith and Zimmerman [who is Mennonite] getting it on in the back of this buggy? Why is he above the law?

- [Celebrating removal of Smith from her office] "Jesse L Smith Gets Fired; Don't Let the Door Hit Ya on The [sic] Way Out"

TAC at ¶¶ 141, 144, 162, Exhibits 016, 030, 042, 043, 051. Appellant's TAC averred that Defendant/Appellee Gervase explained her tactics to her audience in an email, as follows:

> We want to embarrass Jessie L Smith into doing her job, maybe having her name all over the internet connected with sexual favors on a Mennonite may get her to get off her ass and do something if she wants this to end. There is already blatant animal cruelty taking place at Turkey Hill. There are other attacks in the works as well.

TAC at ¶ 168.

Appellant's TAC also alleged that Appellees Gervase, Jenny Stephens, Main Line Animal Rescue, Inc., and Main Line Executive Director and self-described animal advocate William Smith acted both individually and conspiratorially in authoring and republishing defamatory posts and emails about Appellant. Specifically, the TAC averred that Main Line Animal Rescue promoted on its Facebook page and website the aforementioned Gervase post asking if a sexual relationship or an illicit financial arrangement with an allegedly scofflaw kennel owner might possibly explain why Appellant failed to carry out the duties of her office. The TAC also alleged that Main Line, in publicly criticizing Appellant, underreported the Bureau of Dog Law

Enforcement ("BDLE") record of sanctioning noncompliant kennels for their violations.

William Smith, the TAC maintained, sent to Appellant's superior, Agriculture Secretary George Grieg, an email repeating Gervase's accusations. The TAC also averred that William Smith posted a false statement on Main Line's Facebook page after Appellant's reassignment that she was "unpopular with many in Pennsylvania's animal welfare community and often went to great lengths to protect breeders over the dogs in their kennels."

As for Appellee Lancaster Newspapers, Inc., the TAC averred that the newspaper's online version published an article discussing the kennel controversy and supplying a hyperlink to the Gervase blog in question. The TAC posited that the hyperlink constituted a republication of the allegedly defamatory and disparaging blog.

In Appellant's first issue, she argues that the trial court erred in sustaining preliminary objections in favor of Appellees Lancaster Newspaper, William Smith, and Main Line Animal Rescue[3] where her complaints sufficiently averred their "individual and collective attacks through the coordinated and widespread dissemination of false and offensive information [caused her] to suffer[] irreparable harm to her reputation in the community and to her career." Appellant's brief, at 24.

_____

[3] Appellant does not challenge the order sustaining the preliminary objections of Jenny Stephens.

In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
> (6) Special harm resulting to the plaintiff from its publication.
> (7) Abuse of a conditionally privileged occasion.

42 Pa.C.S. § 8343(a).

On the matter of what constitutes a defamatory communication, this Court recently explained:

> "A communication may be considered defamatory if it tends to harm the reputation of another so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." **Bell v. Mayview State Hosp.**, 853 A.2d 1058, 1062 (Pa.Super. 2004) (citation omitted). Further, in determining whether a statement is capable of defamatory meaning, a court must view the statement in context. **See id.** [4] "The nature of the audience is a critical factor in determining whether a statement is capable of defamatory meaning." **Dougherty v. Boyertown Times**, 377 Pa.Super. 462, 547 A.2d 778, 783 (1988) (some quotation omitted).
>
> > When raised by a public figure concerning statements bearing on a matter of public concern, claims for defamation are subject to an onerous standard of

---

[4] **See also Thomas Merton Ctr. v. Rockwell Int'l Corp**., 442 A.2d 213, 216 (Pa. 1981) ("Words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable. Thus, we must consider the full context of the article to determine the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.")

proof, owing to considerations of free speech that inhere to any claim that implicates the First Amendment. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (emphasizing the obligation of appellate courts to ensure that judgments entered pursuant to state tort law do not intrude on the "field of free expression"). Consequently, our Courts' First Amendment jurisprudence makes clear that statements on matters of public concern must be provable as false before there can be liability under state defamation law.... Moreover, …a statement of opinion relating to matters of public concern that does not contain a provably false connotation will receive full constitutional protection.

*Krajewski v. Gusoff*, 53 A.3d 793, 803 (Pa.Super. 2012) (quotation marks and quotations omitted) (footnote added).

In determining whether a statement is capable of defamatory meaning, the trial court must also ascertain whether the statement constitutes an opinion. The question of "[w]hether a particular statement constitutes a fact or an opinion is a question of law for the trial court to determine." *Mathias v. Carpenter*, 402 Pa.Super. 358, 587 A.2d 1, 3 (1991). Hence,

[i]n determining whether [a publication is] capable of defamatory meaning, a distinct standard is applied [when] the publication is of an opinion. *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571, 575 (1986), *appeal denied,* 532 Pa. 665, 616 A.2d 986 (1992). "A statement in the form of an opinion is actionable only if it may reasonably be understood to imply the existence of *undisclosed* defamatory facts justifying the opinion. A simple expression of opinion based on disclosed facts is not itself sufficient for an action of defamation." *Id.* (internal citations omitted); *see also Neish v. Beaver Newspapers, Inc.*, 398 Pa.Super. 588, 581 A.2d 619, 622–24 (1990), *appeal denied*, 527 Pa. 648, 593 A.2d 421 (1991) (editorial criticizing the way appellant handled his job and suggesting replacing him was an opinion not based on undisclosed defamatory facts and, therefore, was not actionable. The Court found that while the statements in the editorial "might be viewed

- 11 -

as annoying and embarrassing, they were not tantamount to defamation.").

***Kurowski v. Burroughs***, 994 A.2d 611, 618 (Pa.Super. 2010)

(emphasis in original).

This principle is in conformity with Restatement (Second) of Torts § 566, Expression of Opinion. ***See Mathias***, ***supra*** (applying § 566). That section provides: "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." Restatement (Second) of Torts § 566.

Thus, generally, only statements of fact, rather than mere expressions of opinion, are actionable under Pennsylvania's defamation law. ***Bell***, ***supra***. In order for an opinion to be deemed capable of defamatory meaning, it must reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion. ***Dougherty***, ***supra***.

. . .

> Caselaw prescribes additional elements that arise in relation to the character of the statement, the role of the defendant as a media outlet, or the role of the plaintiff as a public official or public figure. If the statement in question bears on a matter of public concern, or the defendant is a member of the media, First Amendment concerns compel the plaintiff to prove, as an additional element, that the alleged defamatory statement is in fact false.[4] ***See Philadelphia Newspapers, Inc. v. Hepps***, 475 U.S. 767, 777, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986); ***see also Milkovich v. Lorain Journal Co.***, 497 U.S. 1, 2, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); ***Ertel v. Patriot−News Co.***, 544 Pa. 93, 674 A.2d 1038, 1041 (1996).
>
> If the plaintiff is a public official or public figure, she must prove also that the defendant, in publishing the offending statement, acted with "actual malice," *i.e.* "with knowledge that [the statement] was false or

- 12 -

with reckless disregard of whether it was false or not." *Curran v. Philadelphia Newspapers, Inc.*, 376 Pa.Super. 508, 546 A.2d 639, 642 (1988).

"Actual malice" is a fault standard, predicated on the need to protect the public discourse under the First Amendment from the chill that might be fostered by less vigilant limitations on defamation actions brought by public officials.

> [T]he stake of the people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies. Neither lies nor false communications serve the ends of the First Amendment, and no one suggests their desirability or further proliferation. But to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones.

*Curran*, 546 A.2d at 643. Thus, the actual malice standard, by design, assures "that public debate will not suffer for lack of 'imaginative expression' or 'rhetorical hyperbole' which has traditionally added much to the discourse of this Nation." *Milkovich*, 497 U.S. at 2, 110 S.Ct. 2695. "[T]he First Amendment requires that we protect some falsehood in order to protect speech that matters."

Thus, the "actual malice" standard is a constitutionally mandated safeguard and, as such, must be proven by clear and convincing evidence, the highest standard of proof for civil claims. Moreover, evidence adduced is not adjudged by an objective standard; rather, "actual malice" must be proven applying a *subjective* standard by evidence "that *the defendant in fact entertained serious doubts as to the truth of his publication."* *See Curran*, 546 A.2d at 642. This

determination may not be left in the realm of the factfinder:

> The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of "actual malice".

*Curran*, 546 A.2d at 644. We have recognized accordingly that the question of "actual malice" is not purely one of fact, but rather may be described as one of "ultimate fact," a "hybrid of evidential fact on the one hand and conclusion of law on the other." *Id*.

Application of these concepts is more difficult than its recitation. *See Curran*, 546 A.2d at 644. "[E]rroneous statement is inevitable in free debate, and…must be protected if the freedoms of expression are to have the 'breathing space' that they need to survive." *Id.* at 645. To minimize judicial intrusion into this "breathing space," our courts have tended to measure actionable conduct by what the defendant did, as opposed to what it refrained from doing or might have done but omitted to do. *Curran*, 546 A.2d at 648. Thus, while "actual malice" may be shown by circumstantial evidence of events surrounding the publication of the offending statement, that evidence must tend to establish fabrication, or at least that the publisher had "obvious reasons to doubt the veracity of the informant or the veracity of his reports." Because "actual malice" is a fault standard, it is not shown by the falsity of the statement in and of itself. *See Curran*, 546 A.2d at 642. Similarly, evidence of ill will or a defendant's desire to harm the plaintiff's reputation, although probative of the defendant's state of mind, without more, does not establish

- 14 -

> "actual malice." ***Harte–Hanks Communications, Inc. v. Connaughton***, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) ("The phrase 'actual malice' is confusing in that it has nothing to do with bad motive or ill will.").
>
> ***Lewis v. Philadelphia Newspapers, Inc.***, 833 A.2d 185, 191-93 (Pa.Super. 2003) (quotations and citations omitted) (emphasis in original) (footnote added).

***Kuwait & Gulf Link Transp. Co. v. Doe***, 2019 PA Super 234, at *7 (Aug. 1, 2019).

At the outset, we observe that Appellee Gervase's blog statements are central not only to the claims against her individually but also to the conspiracy claim implicating William Smith and Main Line Animal Rescue, and to the defamation claim against Lancaster Newspaper. For these reasons, we first examine whether Theresa Gervase's relevant statements appearing in her blog were capable of a defamatory meaning as contemplated under the applicable standard of review.

In her blog statements, reproduced *supra*, an openly frustrated Gervase questioned why the Turkey Hill Kennel remains open despite an unfavorable investigation report filed by the BDLE, and asked in an ostensibly speculative—albeit profane—manner whether sex or bribery was involved. Gervase's guesswork did not name Appellant specifically, and her query is offered in such a freewheeling and sensational way—without any suggestion that it relies on fact or evidence for support—that there is no reason to believe that the average reader to whom Gervase directs her blog would have understood the

statement as anything other than an obviously satirical expression of her frustration with relevant official decisionmaking.

Furthermore, the blatant outlandishness of Gervase's subsequent post eliminates any reasonable doubt her audience might have harbored about the satirical posture of the comments in question. Again devoid of any discussion—let alone a serious one—of fact or evidence offered to support the "allegation" within, the second post consists of a stock photograph of a horse and enclosed buggy of the style typically seen in Lancaster County, and asks if Appellant and the Kennel owner—a Mennonite—might be "getting it on" inside. While embarrassment and personal offense understandably could flow from such base and ignoble commentary, this second post nevertheless is no more than a farcical addition to an already patently satirical theme clearly intended to draw attention to Gervase's opinion that Appellant, as head of the Dog Law Enforcement Bureau, should close the Turkey Hill Kennel.

As discussed above, for an opinion to constitute defamation of a public figure regarding a matter of public concern, "it must reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." ***Dougherty***, ***supra***. Here, we find that no audience would reasonably understand Gervase's comments to imply the existence of undisclosed defamatory facts relating to a sexual relationship or bribery. Given the utterly sophomoric presentation of a speculative, baseless suggestion, the aim of such posts would have been obvious to her readers—use offensive and ridiculous expression only as a means to gain attention to the Gervase's

- 16 -

sincerely held political opinion.[5] *See Commonwealth v. Knox*, 190 A.3d 1146, 1154 (Pa. 2018) (acknowledging First Amendment protections attach "equally to cultured, intellectual expressions and to crude, offensive, or tawdry ones.") (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) (First Amendment protections attached to adult magazine's "parody" of advertisement portraying plaintiff, a public figure and preacher, as stating his "first time" was with his mother in an outhouse; actual malice not shown where parody could not "reasonably be understood as describing actual facts….").  Accordingly, upon examination of the Third Amended Complaint and its attachments, we conclude it is free and clear from doubt that Appellant would be incapable of proving by clear and convincing evidence that actual malice attended the statements appearing in Theresa Gervase's blog.

Turning, then, to Appellant's defamation claim against Lancaster Newspaper for its alleged republication of the Gervase blog, we observe that such claim was conditional upon first finding that the Gervase posts were capable of a defamatory meaning.  As we have refuted this necessary condition, it follows that we may affirm the order sustaining preliminary objections to the defamation claim lodged against Lancaster Newspaper.

Next, we address Appellant's contention that the trial court erroneously sustained preliminary objections to her claims against William Smith and Main Line Animal Rescue.  In Appellant's brief, she argues that her TAC averred

---

[5] As the attachments to the TAC establish, Gervase admitted to this tactic in an email she sent to a follower shortly after posting the comments in question.

- 17 -

sufficient facts that William Smith authored defamatory emails and posts in both his individual capacity and as the President/Director of Main Line Animal Rescue.

For instance, Appellant states, the TAC identified as a source of defamation William Smith's "Open Letter" of June 9, 2011, which he posted on Main Line's Facebook page, and other remarks by Smith critical of the Bureau of Dog Law Enforcement's response to an inspection of Turkey Hill Kennel revealing poor air quality and other deficits. Exhibits to Plaintiff's TAC, p. 8. In the article, Smith asked rhetorically, "How long are you going to allow these poor dogs to suffer?" suggesting that the Bureau was remiss in failing to contact a local humane officer. *Id*. Smith also opines that allowing the kennel to use proscribed wire flooring in certain situations is "hardly valid." *Id.* He concludes "It's a great tragedy that in this great state we're allowing people to deny hundreds of dogs breathable air." *Id.*

The TAC provides the following excerpt of Smith's remarks:

Secretary Smith [Appellant] is claiming "appropriate action" has been taken against this kennel. Appropriate action was NOT taken. The fact that her Bureau still refuses to contact local humane agents when her inspectors find conditions that so obviously pose a threat to the welfare of hundreds of dogs is appalling and reflects badly on her personally now that she is acting director of the BDLE. Last summer, we were also assured by Secretary Smith that dogs' feet were no longer falling through the wire strand flooring in commercial kennels. Well, here is proof that PA still has a serious problem with the enforcement of the laws designed to protect breeding dogs in these facilities. If the section of our new laws guaranteeing unfettered access to outside exercise runs was being enforced, the dogs trapped inside this facility could have escaped the noxious fumes by simply going

outside. But Secretary Smith and the Department of Agriculture still believe the financial hardship of installing indoor/outdoor runs (which is almost nothing) trumps the health and welfare of hundreds of innocent animals. What stinks more? The air in this kennel last March – or the fact that our money pays Secretary Smith's salary and she's once again failing to do her job.

TAC at ¶ 204.

According to Appellant, Smith's accusations of a mishandled investigation relied upon "misrepresented facts and statistics regarding [Appellant] and made other false representations regarding [Appellant's] competence. Appellant's brief, at 38 (citing TAC ¶¶ 203-205). Appellant also averred that Smith sent what she called a "defamatory" email to both Secretary Grieg and her containing

false and defamatory statements that stated or were reasonably understood to imply that: [Appellant] had granted improper waivers, willfully failed to respond to complaints, failed to pass on complaints to dog wardens, pushed a compromise which allowed the violations at Turkey Hill, and then had a "handful of supporters write false statements in support of the compromise, which were falsely characterized as having caused or condoned conduct which was illegal under both the prior and current laws.

TAC at ¶¶ 207, 208.

Appellant likewise points to a June 16, 2011, post authored by Smith on Main Line's Facebook page announcing her removal from office. In the post, Smith stated "[Appellant] was unpopular with many members of Pennsylvania's animal welfare community and often when [sic] to great lengths to protect the breeders over the dogs in their kennels." TAC ¶¶ 228-231. Again, the TAC avers that the latter clause in the quotation represented a falsehood.

With respect to William Smith's comments criticizing the Bureau generally and Appellant specifically for official decisions following the inspection of Turkey Hill Kennel, we find them incapable of a defamatory meaning where they represent Smith's opinions based solely on disclosed facts of public concern. *See Kuwait*, *supra*. Moreover, Smith's statement that Appellant went to great lengths to protect breeders over the dogs is fairly understood to express only his opinion on how Appellant in her official capacity should have balanced the potentially competing interests of kennel microeconomics and dog health/safety at play in operating a kennel. Finally, to the extent the TAC takes issue with the accuracy of Smith's statistics on the BDLE, it does not aver the kind of fabrication or reckless disregard for the veracity of his report that the "actual malice" fault standard requires. Averring the mere falsity of Smith's statistics, in and of itself, was not enough. *See Curran*, 546 A.2d at 642.

Because the averments pertaining to comments posted by William Smith and Main Line Animal Rescue, therefore, do not reflect actual malice, we affirm the order sustaining preliminary objections in favor of William Smith and Main Line Animal Rescue with respect to Appellant's defamation claim. Furthermore, as we have concluded it is clear and free from doubt that Appellant is incapable of proving a defamation claim against any of the named Defendants/Appellees, we may also affirm the trial court's order sustaining all preliminary objections to Appellant's conspiracy to commit defamation claims.

The next part to Appellant's first issue contends that the trial court erred in sustaining preliminary objections to her claim of false light invasion of privacy. As with defamation, the elements of a claim for false light include knowledge of, or reckless disregard for, the falsity of a publication:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
>> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>>
>> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
>
> Restatement (Second) of Torts § 652E.

*Coleman v. Ogden Newspapers, Inc.*, 142 A.3d 898, 905 (Pa.Super. 2016).

The United States Supreme Court has extended First Amendment protections to speech uttered in violation of a plaintiff's state privacy rights. *See Time, Inc. v. Hill*, 385 U.S. 374, 389, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) (extending actual malice standard—requiring that "the defendant acted with knowledge of the falsity of the statement or in reckless disregard as to truth or falsity"—to claim of false light invasion of privacy under state statute). *Krajewski*, 53 A.3d at 807–08. *See also Coleman v. Ogden Newspapers, Inc.*, 142 A.3d 898, 906 (Pa.Super. 2016) (recognizing actual-malice prong to false light claim).

- 21 -

We have already determined that Appellant's TAC fails to aver actions on the part of Appellees demonstrating actual malice. For this reason, we conclude that it is clear and free from doubt that Appellant will be unable to prove facts legally sufficient to establish a necessary element to her false light claims and the conspiracy claims corresponding thereto.

Next, we address Appellant's argument challenging the trial court's orders sustaining preliminary objections to her disparagement claims. Regarding the tort of disparagement, the Pennsylvania Supreme Court has observed:

> The Restatement (Second) of Torts § 623A labels this tort as "injurious falsehood." Regardless of the label, the publication of a disparaging statement concerning the business of another is actionable where: (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity. Restatement (Second) of Torts § 623(A) (1977).

*Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002).

In its Pa.R.A.P. 1925(a) opinion, the trial court explains why it sustained Appellees' preliminary objections with respect to Appellant's disparagement claim:

> Appellant fails to show that Appellees intended for publication of the allegedly false statements to result in harm to interests of Appellant having a pecuniary value. To the contrary, in her [TAC], Appellant alleges the "motives" as follows: "(1)[Appellees] believed the compromise was inadequate; (2) [Appellees] felt that

increasingly aggressive action was needed to restore waning attention of the media; (3) [Appellees] had vested financial interests in keeping the passions of their donors inflamed; (4) [Appellees] had become enamored of it [if] not addicted to self-aggrandizing publicity; and (5) rather than attempting to work with those actually tasked with enforcing the law, [Appellees] worked actively to undermine it, in order to justify their unceasing calls for more radical solutions, which the Legislature had not approved in the original law." (TAC at ¶ 38; SAC at ¶ 37). As such, the allegations raised by Appellant do not establish any allegedly false statements intending for the publication of the statement to result in harm to interests of the other having a pecuniary value.

Furthermore, assuming arguendo that defendants'[/Appellees'] statements were intended to result in harm to Appellant, she fails to state any *pecuniary loss*.[] Appellant filed her initial Complaint in August of 2012, and she filed various subsequent complaints, the most recent being a Third Amended Complaint filed in February of 2014. In none of her four (4) complaints does Appellant allege a specific amount of monetary loss that she suffered as a result of the allegedly false publications despite having nearly two years to determine such amount of monetary damages. Moreover, as alluded to above, Appellant has even indicated that she continues to reside, work, and earn a living in Dauphin County, Pennsylvania. (TAC at ¶ 8; SAC at ¶ 8).

Trial Court Opinion, filed 11/2/18, at 13-14.

Appellant counters the court's opinion by claiming economic damages or pecuniary loss are presumed without proof of harm to reputation if actual malice is shown. **See** Appellant's brief at 56, 45, and 63 (citing **Philadelphia Newspapers, Inc. v. Hepps**, 475 U.S. 767, 773-774 (1986) for the proposition that actual malice must be shown to recover either punitive damages or presumed compensatory damages, *i.e.*, compensatory damages without proof of harm to reputation). As discussed *supra*, however, we have concluded that Appellant's TAC makes it free and clear of doubt that she will

- 23 -

be unable to prove facts legally sufficient to establish Appellees acted with actual malice in making their comments. Accordingly, we find no merit to Appellant's challenge to the court's orders sustaining Appellees' preliminary objections to Appellant's claim of disparagement.

Finally, we address Appellant's contentions that the court erred in striking the default judgment entered against Theresa Gervase for defective service and in dismissing the action against her for reasons of collateral estoppel.

Regarding the court's decision to strike default judgment against Gervase, the trial court relied on either of two bases to strike default judgment on the Third Amended Complaint.

The first basis centered on Appellant's failure to include on the TAC a notice to defend. Relevant authority consistently provides that such an omission renders the complaint, itself, fatally defective. **See**, **e.g.**, Pa. R.C.P. No. 1018.1(a) ("Every complaint filed by a plaintiff ... shall begin with a notice to defend...."); 11 Standard Pennsylvania Practice 2d § 68:6 (2010 ed.) ("A complaint that omits the notice to defend is facially and fatally defective.") (citing **Gerber v. Emes**, 511 A.2d 193 (Pa.Super. 1986); **Clymire v. McKivitz**, 504 A.2d 937 (Pa.Super. 1986)); **Mother's Rest., Inc. v. Krystkiewicz**, 861 A.2d 327 (Pa.Super.2004) (holding default judgment entered by prothonotary void *ab initio* where plaintiff's amended complaint did not contain a notice to defend).

In **Mother's**, this Court examined the very issue presently before this panel, and reasoned as follows:

Rule 1511(a)[6] of the Pennsylvania Rules of Civil Procedure authorizes the prothonotary to enter a judgment of default upon the praecipe of the plaintiff where the defendant fails "to plead within a required time to a complaint **which contains a notice to defend**." (Emphasis added). Despite this clear rule, our review of the record reveals that the prothonotary entered a default judgment even though Restaurant's amended complaint did not contain a notice to defend. The Restaurant's failure to include the notice to defend constitutes a facial defect of record and renders the default judgment void due to the prothonotary's lack of authority to enter it. **See Clymire** [ ] (finding the entry of a default judgment facially defective where the defendant failed to respond to a complaint which did not contain a notice to defend); **Gerber** [at] 198; **Franklin Interiors, Inc. v. Browns Lane, Inc.**, 227 Pa.Super. 252, 323 A.2d 226, 228 (1974) (holding that "a default judgment entered where there has not been strict compliance with the rules of civil procedure is void"); **Lewandowski v. Crawford**, 208 Pa.Super. 365, 222 A.2d 601, 601 (1966) (*en banc*) (holding that the failure to endorse a pleading with the proper notice relieves the opposite party of the obligation to file a responsive pleading and precludes the entry of default judgment); **Phillips v. Evans**, 164 Pa.Super. 410, 65 A.2d 423, 424 (1949) (stating the "prothonotary acts in a ministerial and not a judicial capacity, and a judgment entered by [the prothonotary] upon default or admission, except as provided by [the Rules of Civil Procedure] is a nullity without legal effect").

. . .

Foremost, Rule 1018.1 of the Pennsylvania Rules of Civil Procedure unequivocally states that, "**every** complaint filed by a

---

[6] Rule 1511(a) was rescinded on December 16, 2003, effective July 1, 2004, and has essentially been replaced by a functionally equivalent Rule 1037(b), which provides in relevant part, "the prothonotary, on praecipe of the plaintiff, shall enter judgment against the defendant for failure to file within the required time a pleading to a complaint which contains a notice to defend. . . ."

plaintiff ... shall begin with a notice to defend." Pa.R.C.P. 1018.1; *see* Explanatory Note, Pa.R.C.P. 1501 (finding the procedure enunciated in Rule 1018.1 applicable to equity actions). Additionally, Rule 1026 provides that

> every pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading, but no pleading need be filed unless the preceding pleading contains a notice to defend or is endorsed with a notice to plead.

Pa.R.C.P. 1026; *see* Explanatory Note, Pa.R.C.P. 1501 (finding the provisions of Rule 1026 applicable in equity actions).

In view of the plain language of Rule 1018.1, we find that every complaint, including amended complaints, must include Notice to Defend. Furthermore, as stated in Rule 1026, Krystkiewicz had no obligation to file a responsive pleading since the preceding pleading (the Restaurant's amended complaint) did not contain a notice to defend. As Krystkiewicz had no duty to respond to the complaint under Rule 1026, the prothonotary had no authority to enter the default judgment pursuant to Rule 1511. Accordingly, we reverse the order of the trial court denying Krystkiewicz's "Petition For Relief From Judgment By Default" and remand for further proceedings.

*Mother's*, 861 A.2d at 337–38.

Such authority compels the same remedy in the present matter. Accordingly, because this basis, alone, supported striking default judgment entered against Gervase, we discern no error with the trial court order in this regard.[7]

As for the court's determination that the Jenny Stephens defamation judgment in Philadelphia County collaterally estopped Appellant's claims

---

[7] We note, additionally, that Appellant failed to provide argument challenging the court's decision to strike default judgment for the complaint's lack of a "notice to defend."

against Theresa Gervase so as to require dismissal of the action against her, we find this issue mooted by our own determination that dismissal is required because the TAC failed to support a conclusion that Appellant could prove actual malice on Gervase's part by clear and convincing evidence.

For the foregoing reasons, therefore, we affirm the order entered below.

Order affirmed.

Judge Murray joins the memorandum.

Judge Lazarus concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2019